# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SENICA DEMECE HALE,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 322144
Wayne Circuit Court
LC No. 13-008126-FC

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, carjacking, MCL 750.529a, felon in possession of a firearm, MCL 750.224f, felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 18 to 60 years each for the armed robbery and carjacking convictions, six months to five years for the felon-in-possession conviction, and six months to four years for the felonious assault conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

At approximately 10:15 p.m. on August 3, 2013, Ditanion Cummings was confronted by two men, each brandishing a firearm, outside a store in Detroit. The men stole his money and car keys, and one of them drove away in Cummings's Jeep Grand Cherokee. Two days later, the police arrested defendant because of his involvement in another attempted carjacking, and they discovered Cummings's Jeep in the parking lot of the housing complex where defendant resided. Cummings thereafter identified defendant in a photographic array as one of the two perpetrators involved in his offense.

The offense was recorded on the store's surveillance video system, but when a police officer went to the store to obtain the video, he learned that it had already been deleted from the system. On the first day of trial, the prosecutor learned that Cummings had viewed the video before it was deleted, and made his own recording of the video on his cell phone. The prosecutor promptly disclosed this information to the court and to defense counsel. Defense counsel opposed admission of the video recording because of its late disclosure, but the trial court ruled that it could be admitted, provided defense counsel was given an opportunity to view it before it was introduced. Ultimately, however, the prosecutor did not introduce this evidence.

-1-

At trial, Cummings identified defendant as one of the two men who carjacked and robbed him. Defendant presented an alibi defense at trial. Defendant testified that he was at a party at his sister's house from approximately 5:00 p.m. to 1:00 a.m. on the evening of the offense. Defendant's sister and girlfriend each testified in support of defendant's alibi defense. Both witnesses refused to give a police statement before trial in support of the alibi defense.

## I. PHOTOGRAPHIC LINEUP

Defendant first argues that Cummings's identification of defendant was tainted by an impermissibly suggestive pretrial photographic lineup. Because defendant did not raise this issue in an appropriate motion in the trial court or request a *Wade*[1] hearing, and he did not object to the identification testimony at trial, this issue is unpreserved. *People v Daniels*, 163 Mich App 703, 710; 415 NW2d 282 (1987). Therefore, review of this issue is limited to plain error affecting defendant's substantial rights. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).

Defendant also argues that defense counsel was ineffective for failing to move to suppress Cummings's identification testimony, and failing to request a *Wade* hearing. Defendant preserved this claim by requesting a *Ginther*[2] hearing in a motion to remand, which this Court granted. *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011). Following the hearing, the trial court found that defendant failed to substantiate his claim of ineffective assistance, and accordingly, denied his motion for a new trial. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. The trial court's findings of fact are reviewed for clear error. *Id*. The ultimate question of whether the defendant's constitutional rights were violated is a question of law reviewed de novo on appeal. *Id*. "To obtain relief for the denial of the effective assistance of counsel, the defendant must show that counsel's performance fell short of [an] objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the [trial] would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation omitted).

Defendant argues that Cummings's identification of him should have been suppressed because it was tainted by an impermissibly suggestive pretrial identification procedure. "A lineup can be so suggestive and conducive to irreparable misidentification that it denies an accused due process of law." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002) To successfully challenge an eyewitness identification on due process grounds, a criminal defendant " 'must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification.' " *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001), quoting *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). "If a witness is exposed to an impermissibly suggestive

---

[1] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998).

We reject defendant's argument that the photographic lineup presented to Cummings was unduly suggestive because the photograph of defendant depicted a close-up headshot, whereas the photos of the other subjects depicted head and shoulder shots. Differences among participants in a lineup "are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from other lineup participants." *Hornsby*, 251 Mich App at 466. A photographic lineup is generally "not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features . . . ." *Kurylczyk*, 443 Mich at 304. "Thus, differences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn by a defendant and the others pictured in a photographic lineup have been found not to render a lineup impermissibly suggestive." *Id*. at 304-305. "Physical differences generally relate only to the weight of an identification and not to its admissibility." *Hornsby*, 251 Mich App at 466. "The credibility of identification testimony is a question for the trier of fact . . . ." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

In *Kurylczyk*, the defendant argued that a pretrial photographic lineup was impermissibly suggestive "because various characteristics of his photograph caused him to be singled out from the other men." 443 Mich at 303. The Court reviewed the distinctive characteristics of the defendant's photo in the array, explaining:

> [The defendant] argues that he is the only man in the photographic array who was dressed in clothing that matches the clothing reported to have been worn by the robber. Particularly obvious in defendant's photograph is a chain attached to his belt and extending to a wallet in the rear pocket of his jeans. None of the others in the photographic lineup wore a trucker's wallet. Moreover, this wallet was plainly visible in the bank's surveillance photographs that were published in the local paper. In addition, defendant complains that his photograph was taken from a closer distance, so that his image appears larger than the others, and the background appears to be a different color. Finally, defendant points out that three of the men in the array have mustaches; defendant does not have a mustache, and none of the witnesses described the robber as having a mustache. [*Id*. at 303-304.]

The Court acknowledged that the defendant's photograph "stood out from the others in a suggestive fashion," especially with respect to the trucker's wallet. However, the Court held that "a suggestive lineup is not necessarily a constitutionally defective one," because "a suggestive lineup is improper only if under the totality of the circumstances there is a substantial likelihood of misidentification." *Id*. at 306. The Court held that under the totality of circumstances, in which the victims had ample opportunity to view the robber during the offense, and in which they gave detailed descriptions that matched the defendant's appearance in the photograph, the identification was reliable. *Id*. at 307-309.

The only distinct feature of defendant's photograph in the photo array used in this case is that defendant's face is slightly closer than the subjects seen in the other photographs. Although this distinction is noticeable, it is not a basis for substantially distinguishing defendant from the others as a participant in the carjacking. Defendant's reliance on *Legenzoff v Steckel*, 564 F Appx 136 (CA 6, 2014), in support of his argument that the photographic lineup was unduly suggestive is misplaced. *Legenzoff* is a civil case brought pursuant to 42 USC 1983, in which the underlying issue was whether the plaintiff's photo was sufficiently distinct to undermine the array's legitimacy as a tool for establishing probable cause to arrest the plaintiff. The court rejected background color, i.e., a difference of composition, as a basis for undermining the reliability of the witnesses' identifications. The court's other two considerations, dissimilarity of hair color and dissimilarity of clothing, are not relevant to this case, in which defendant does not allege that the other subjects were markedly dissimilar from him in physical appearance. This case is also factually distinguishable from *United States v Wiseman*, 172 F3d 1196 (CA 10, 1999), abrogated on other grounds in *Rosemond v United States*, __ US ___; 134 S Ct 1240; 188 L Ed 2d 248 (2014), which involved multiple distinctive features between the defendant's photo and the photos of the other subjects. In this case, the mere distance of defendant's head shot in comparison to the subjects in the other photos did not give rise to a substantial likelihood of misidentification in light of the totality of the circumstances.

Defendant also argues that the photographic lineup was improper because the police did not have an individualized suspicion that he was a perpetrator in the Cummings carjacking. He contends that the police were on a "fishing expedition" to charge him with another offense because he exercised his right to remain silent in relation to the attempted carjacking matter. Defendant does not cite any authority in support of his position that the police must have a requisite degree of suspicion before they can include a person's photo in a photographic lineup. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640–641; 588 NW2d 480 (1998). The record discloses that defendant was arrested for a different carjacking offense that was committed two days after the instant offense, and the police discovered Cummings's stolen vehicle at the same housing facility where defendant resided. Under these circumstances, we find nothing improper about the police including defendant's photo in a photographic array to determine whether defendant may have been involved in the Cummings carjacking. Although defendant argues that the police vindictively included him in the array to "target" him because of his refusal to cooperate in the second carjacking matter, the trial court did not find any improper motive for using defendant's photo in the array as an investigative tool. Moreover, regardless of the police motives, it was Cummings's identification of defendant as one of the perpetrators that led to the charges against defendant, and there is no indication that Cummings's identification was impermissibly tainted by any police conduct or that the photographic array was unduly suggestive.

Defendant also argues that Cummings's attempt to choose a second perpetrator at the photo array, and the officer's response that only one suspect was in the array, are additional bases for suppressing Cummings's identification. In *People v McElhaney*, 215 Mich App 269, 287; 545 NW2d 18 (1996), this Court held that if an officer told the complainant that the perpetrator was in the lineup, "this fact alone would not render the lineup unduly suggestive." Defendant cites *United States v Smith*, 156 F3d 1046, 1050-1051 (CA 10, 1998), in which an

-4-

officer "pressed" the witnesses to "assume" that the perpetrator was in the lineup, but in that case the police also used photos that came from a recent high school yearbook from the school that one of the witnesses recently attended, the names were left attached to the photos, and subsequent witnesses viewing the array could see which photos the previous witnesses selected. In the instant case, the officer indirectly indicated that a suspect was in the lineup, but did so only after Cummings identified defendant. Thus, the officer's statement could not have influenced Cummings's identification of defendant. Cummings's attempt to identify the other perpetrator in the offense, after identifying defendant, does not indicate any impropriety in the procedure that led to defendant's identification. At most, it might undermine the credibility of Cummings's identification of defendant, but "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Davis*, 241 Mich App at 700.

Finally, defendant argues that the identification procedure was tainted by Cummings's viewing of the store surveillance video. We find no logical connection between Cummings's exposure to the video and the fairness of the identification procedure. The video was not composed by the police or any other party under circumstances that could influence Cummings's identification in the photo array. The effect, if any, of the video on Cummings's subsequent identification of defendant was a matter for the jury to consider in evaluating the weight and credibility of Cummings's identification, but it does not affect its admissibility.

In sum, defendant has not established any basis for suppressing Cummings's identification, or for requesting a *Wade* hearing. Therefore, defendant's related ineffective assistance of counsel argument also cannot succeed. Counsel is not ineffective for failing to advance a meritless argument or failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor engaged in misconduct by eliciting Officer Schmelter's testimony that defendant refused to participate in a live lineup, and by remarking in closing argument that defendant's refusal to participate in the lineup was inconsistent with his claim of innocence. Defendant further argues that it was improper for the prosecutor to elicit that his alibi witnesses were unwilling to provide a police statement in support of defendant's alibi claim. Defendant failed to preserve these claims of prosecutorial misconduct with a timely objection and request for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Therefore, our review is limited to plain error affecting defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004).

This Court reviews a prosecutor's conduct by examining the record and evaluating the prosecutor's remarks in context. *People v Mann,* 288 Mich App 114, 119; 792 NW2d 53 (2010) (quotation omitted). The test for prosecutorial misconduct is whether the prosecutor's questions or comments deprived defendant of a fair and impartial trial. *People v Dobek,* 274 Mich App 58, 63; 732 NW2d 546 (2007).

During closing argument, the prosecutor stated:

You heard them testifying. It seems pretty practiced. They both said, oh, I remember that day exactly. . . . We were going to have this barbecue. Mr. Hale showed up at 5:00 and left at 1:00, just exactly when this carjacking occurred. That there were five adults there. However, only two of them are here testifying. You think cousin Fran would be here.

You know, I'm asking you to use your common sense when you listen and you recall that testimony. It was pretty rehearsed, and there's reason. That's their brother, and that's the boyfriend.

We also heard from Mr. Hale. And Mr. Hale, really, he kind of parroted what he sat there and listened to. He sat there and heard the testimony of those two women.

Another thing about those two that got up there and testified, they never showed up, never went to the police, you know, when it first happened, and said, wrong guy, you've got the wrong guy. We know why, because he was at our house.

The prosecutor continued:

Now, Mr. Hale, as I indicated, got up there and really parroted. He heard what they said, and that's basically what he repeated. Yep, we were at a barbecue, and I cooked ribs, and we were there until 1:00.

What didn't he say, though? He didn't say – he didn't explain why he didn't participate in that live lineup. Wouldn't you think, you know – why wouldn't you? Why wouldn't you say, I'm innocent? I want to be in that live lineup. I want – you know, please look at me because I'm innocent. I was at the barbecue.

Uh-uh, he refused. Doesn't give us any explanation about that.

Viewed in context, the prosecutor's remark, "Why wouldn't [a person in defendant's situation] . . . say I'm innocent," did not relate to defendant's refusal to give a statement proclaiming his innocence, but rather his refusal to participate in the lineup. The prosecutor was commenting on defendant's failure to respond to Schmelter's testimony that he refused to cooperate with a corporeal lineup, and suggesting that if defendant had a valid alibi, he should have been willing to participate in the lineup and be confident that the witness would not identify him as the perpetrator.

"A defendant in a criminal case has a constitutional right against compelled self-incrimination and may elect to rely on the "presumption of innocence." US Const, Am V; Const 1963, art 1, § 15. To effectuate this right, "no reference or comment may be made regarding defendant's failure to testify." *People v Fields*, 450 Mich 94, 108-109; 538 NW2d 356 (1995), citing *Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965). But the prohibition upon such comment extends no farther than the reach of a defendant's Fifth Amendment right not to testify. *Fields,* 450 Mich at 109. If the defendant chooses to waive his

Fifth Amendment right and testify on his own behalf, the prosecutor may legitimately comment on weaknesses in his credibility. *Id*. at 109-110. Accordingly, the prosecutor was free to comment on defendant's failure to respond to Schmelter's testimony that defendant refused to participate in a corporeal lineup.

Further, it was not improper for the prosecutor to elicit from defendant's alibi witnesses that they refused to give statements to the police in support of defendant's alibi claim, and to comment on that evidence in closing argument. Because defendant's right to silence does not extend to his alibi witnesses, the questions and comments did not infringe on defendant's right to remain silent.

In sum, defendant has failed to establish any plain error related to the prosecutor's questions or comments. Accordingly, his related claim that trial counsel was ineffective for failing to object to the prosecutor's conduct also cannot succeed. Counsel was not required to make a futile objection. *Ericksen*, 288 Mich App at 201.

### III. SURVEILLANCE VIDEO

Defendant lastly argues that the prosecutor's failure to produce Cummings's cell phone recording of the store's surveillance video violated *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). After the prosecutor disclosed her knowledge of the video on Cummings's cell phone, defense counsel argued that the video should be excluded from evidence because it was not produced before trial. Counsel did not argue that the non-disclosure constituted a *Brady* violation. Therefore, this issue is not preserved and review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-765; 597 NW2d 130 (1999).

A criminal defendant has a due process right to obtain exculpatory evidence possessed by the state if it would raise a reasonable doubt about the defendant's guilt. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994), citing *Brady*, 373 US at 87. To establish a *Brady* violation, a defendant must establish (1) that the prosecution has suppressed evidence, (2) that is favorable to the accused, and (3) when viewed in its totality, is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014); see also *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321303), lv pending; slip op at 4.

The first element applies to evidence within the government's control, even if unknown to the prosecution, without regard to the prosecution's good or bad faith. *Id.* In this case, however, the record discloses that the prosecution never had possession of the video surveillance recording. Rather, it was possessed by Cummings, a non-government witness. Because the evidence was not in the possession of the state, it cannot be said that it was suppressed by the state. See *Jones v Ryan*, 733 F3d 825, 837 (CA 9, 2013), and *United States v Graham*, 484 F3d 413, 417 (CA 6, 2007).

Defendant argues that the state suppressed the evidence by not allowing Cummings to bring his cell phone into the courthouse. There is no merit to this argument. After the existence of the evidence was discovered, the trial court ruled that the evidence could be presented at trial. The prosecutor ultimately elected not to present the evidence. The record discloses that defense

counsel opposed the admission of the evidence. After the prosecution failed to introduce the evidence, there was no request for the evidence by the defense. Accordingly, the record does not support defendant's argument that the evidence was suppressed, or that defendant wanted to present the evidence but was prevented from doing so.

Defendant has also failed to show that the evidence was exculpatory. The only available information about the video was Cummings's testimony that the video depicted one of the perpetrators, who Cummings later identified as defendant, running in the direction of a Burger King restaurant after the robbery and carjacking were complete, and after the first perpetrator had driven away in Cummings's Jeep. Defendant argues that the evidence might have shown that he was not the person in the video, or that Cummings's identification of him in the photographic lineup may have been influenced by the video. Defendant offers no factual support for either of these arguments. Cummings's testimony that he was able to recognize the person in the video as one of the perpetrators, and more specifically, as the person who he later identified as defendant, refutes any suggestion that the video could be considered exculpatory. Further, to the extent that Cummings's identification of defendant at the photographic lineup could be said to have been influenced by the video, that would be an indication of the inculpatory nature of the video, not any exculpatory value.

Regarding the third *Brady* requirement, evidence is "material" only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v Greene,* 527 US 263, 280; 119 S Ct 1936; 144 L Ed 2d 286 (1999) (quotation omitted). "A 'reasonable probability' of a different result . . . [exists] when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v Whitley,* 514 US 419, 434; 115 S Ct 1555; 131 L Ed 2d 490 (1995) (internal quotation marks omitted). There is no basis in the record for concluding that the video would have been favorable to the defense, such as by supporting an argument that someone other than defendant committed the carjacking and robbery. Again, Cummings, the only witness to see the video, did not indicate that it depicted anything that was inconsistent with or that contradicted his version of the events, or his identification of defendant.

In light of the foregoing, defendant cannot establish a *Brady* violation based on the failure to produce the surveillance video before trial, and defense counsel was not ineffective for failing to assert a *Brady* violation at trial.

Defendant also argues that defense counsel was ineffective for failing to request a continuance so that she could view the video before trial started. However, the existence of the video created the risk of damaging defendant's alibi defense. As long as neither attorney had seen it, the video was analogous to Schrodinger's cat, with the potential to either exculpate or inculpate defendant. Under these circumstances, counsel's decision to move to exclude the video was not objectively unreasonable. *Ericksen,* 288 Mich App at 201; *People v Ackerman,* 257 Mich App 434, 455; 669 NW2d 818 (2003). Even if it would have been preferable for counsel to view the video first, defendant has not established that he was prejudiced by counsel's inaction. As previously explained, there is no basis for believing that the video would have been favorable to defendant, and Cummings's brief testimony suggested just the opposite. Accordingly, there is no reasonable probability that the outcome of the trial would have been different if counsel had viewed the video before trial. *Ericksen,* 288 Mich App at 201.

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens