# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICAH ISHONE QUINN,

Defendant-Appellant.

UNPUBLISHED
July 14, 2016

No. 326738
Muskegon Circuit Court
LC No. 14-064748-FC

Before: MURRAY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, unlawful imprisonment, MCL 750.349b, and two counts of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. He was sentenced to 21 to 40 years' imprisonment for his armed robbery convictions, 10 to 15 years' imprisonment for his unlawful imprisonment conviction, and two years' imprisonment for each of the felony-firearm convictions. We affirm his convictions but remand to comply with the procedures set forth in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. FACTUAL BACKGROUND

This appeal arises out of the robbery of a pizza delivery man, Roy Ferguson. As Ferguson was delivering an order to a house in Muskegon, defendant and codefendant Taylin Alexander Glenn followed Ferguson to the door, and defendant put a gun to the back of Ferguson's head. Ferguson was ordered to walk back to his car and to empty his pockets, which included approximately $20, his cell phone, wallet, and keys. Defendant took Ferguson's money and wallet and then ordered Ferguson into the trunk of the car. Ferguson complied. Unsure of what to do with Ferguson, Glenn and defendant drove the car while Ferguson was locked in the trunk.

After stopping the car multiple times to physically assault Ferguson, Glenn and defendant stopped the car a final time, unlocked the trunk, and told Ferguson to count to 100 before exiting the trunk. After counting to 100, Ferguson exited the trunk and began walking to the nearest gas station to call the police.

-1-

After a police investigation, defendant was arrested and charged with armed robbery, unlawful imprisonment, and two counts of felony-firearm. A jury convicted defendant as charged and this appeal ensued.

## II. ANALYSIS

### A.  UNNECESSARILY SUGGESTIVE IDENTIFICATION PROCEDURE

Defendant first argues that Ferguson's identification of him after seeing his picture in the newspaper constitutes an unnecessarily suggestive identification procedure that tainted Ferguson's subsequent identifications of defendant at the preliminary examination and at trial. Defendant did not raise this issue in the trial court, and is therefore unpreserved for appellate review. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). We review unpreserved issues for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 762-765; 597 NW2d 130 (1999). Under the plain error standard, the defendant bears the burden of showing that: "1) error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights," "i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763.

 "An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). However, the due process protections against unnecessarily suggestive identification procedures do not apply in the absence of state action. As the Supreme Court has recently held, the "due process check on the admission of eyewitness identification [is] applicable *when the police have arranged suggestive circumstances* leading the witness to identify a particular person as the perpetrator of a crime." *Perry v New Hampshire*, __ US __; 132 S Ct 716, 730; 181 L Ed 2d 694 (2012) (emphasis added).

Here, defendant has not identified any act by law enforcement officers that improperly suggested that defendant was the perpetrator. Ferguson merely testified that he had seen a picture of defendant in the newspaper. Defendant has not come forth with any evidence indicating that Ferguson's viewing of the news report was arranged by law enforcement or that the police officers led Ferguson to identify defendant as the perpetrator of the crimes. Because there was no state action involved in Ferguson's identification of defendant from a picture in the newspaper, due process does not require suppression of the subsequent identifications. *Id*.

Even if we were to assume that the pretrial identification procedure was impermissibly suggestive, an independent basis for Ferguson's identification of defendant existed, thus removing the taint of the alleged impermissibly suggestive procedure. See *Williams*, 244 Mich App at 542-543. ("If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." (quotation marks and citation omitted)). With respect to whether there was an independent basis to identify the defendant at trial, there are "eight factors that a court should use in determining if an independent basis exists:" (1) "Prior relationship with or knowledge of the defendant;" (2) "The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor[s] affecting sensory perception and proximity to the

alleged criminal act;" (3) "Length of time between the offense and the disputed identification;" (4) "Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description;" (5) "Any previous proper identification or failure to identify the defendant;" (6) "Any identification prior to lineup or showup of another person as defendant;" (7) "[T]he nature of the alleged offense and the physical and psychological state of the victim;" and (8) "Any idiosyncratic or special features of defendant." *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998). However, these factors are not exhaustive. *Id*. at 117 n 12.

In the present case, Ferguson testified that he looked directly at defendant and that there was adequate lighting coming from the house where he was delivering food. Additionally, the preliminary examination was slightly longer than a month after the incident, which is considered a "relatively short period of time." *Id*. at 120. Ferguson was asked to identify the perpetrator in a photographic lineup (which did not include a photograph of defendant) and Ferguson did not erroneously select anyone in the photographic lineup. Additionally, Ferguson's description of defendant—5' 9" with a medium build—was generally accurate. While Ferguson testified that he was nervous during the offense because of the gun, he also testified that he had "a good look" at defendant and that he made a point to remember what defendant looked like in the event he needed to tell his employer or the police. Ferguson also testified that he identified defendant based on what he saw on the night of the incident and that he was sure that defendant was the individual. These factors all weigh in favor of concluding that Ferguson had an independent basis for his identification of defendant. In contrast, only two factors weigh against such a conclusion. First, Ferguson and defendant did not have a prior relationship, nor did Ferguson know defendant before the offense. Second, defendant did not identify any idiosyncratic or special features of defendant. Nevertheless, after a review of the relevant factors, the totality of the circumstances supported the admission of Ferguson's identification as an independent basis existed to remove any alleged taint of an unnecessarily suggestive pretrial identification. *Williams*, 244 Mich App at 542-543. Thus, defendant has not demonstrated that a plain error occurred. *Carines*, 460 Mich at 763.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that trial counsel was ineffective for failing to bring a motion to suppress the pretrial identification, failing to bring a motion to suppress defendant's confession, and failing to ask certain questions and call alibi witnesses. Because no *Ginther*[1] hearing was conducted, this Court's review is limited to mistakes apparent on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). The questions presented by a claim of ineffective assistance of counsel are mixed questions of law and fact; findings of fact by the trial court, if any, are reviewed for clear error, and questions of constitutional law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

To establish ineffective assistance of counsel, a defendant must show that "his attorney's performance fell below an objective standard of reasonableness," and "this performance so prejudiced him that he was deprived of a fair trial." *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004). In order to establish prejudice, the defendant must establish that there is "a reasonable probability that the outcome would have been different but for counsel's errors." *Id*. at 486. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

## 1. MOTION TO SUPPRESS FERGUSON'S IDENTIFICATION

First, defendant argues that defense counsel was ineffective for failing to file a motion to suppress Ferguson's identification before trial because it violated his due process rights. As explained above, because law enforcement was not involved in Ferguson's identification of defendant in the newspaper, and because there was an independent basis for the in-court identification that was untainted by any suggestive pretrial procedures, defense counsel's objection to Ferguson's trial identification would not have had merit, and counsel cannot be ineffective for failing to make this meritless argument. *People v Collins*, 298 Mich App 458, 470; 828 NW2d 392 (2012).

## 2. MOTION TO SUPPRESS DEFENDANT'S CONFESSION

Second, defendant argues that defense counsel was ineffective for failing to file a motion to suppress defendant's confession because the confession was involuntary. "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). Voluntariness is a totality of the circumstances analysis, which "consider[s] factors such as: the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; whether there was unnecessary delay of the arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency." *Id*. at 264-265. Ultimately, "whether a waiver of *Miranda*[2] rights is voluntary depends on the absence of police coercion." *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000). "In contrast to the voluntary prong, determining whether a suspect's waiver was knowing and intelligent requires an inquiry into the suspect's level of understanding, irrespective of police behavior." *Id*. at 636. "A very basic understanding of those rights is all that is necessary," and "[i]ntoxication from alcohol or other substances can affect the validity of a waiver, but is not dispositive." *Gipson*, 287 Mich App at 265.

Here, the interview lasted approximately two hours, defendant was 17 years old with an 11th grade education, and he had a prior juvenile record with an adult conviction for unlawfully driving away a motor vehicle. On appeal, defendant argues that his statements were involuntary because (1) he was under the influence of various substances, (2) he was 17 years old, and (3) the interviewing officers "moved closer to him, suggesting threatening or coercive behavior."

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Defendant's contention that the interviewing officers moved closer to defendant in a threatening or coercive manner is refuted by the record. Our review of the interview video indicates that the officers did not make any movements toward defendant in a threatening or coercive manner. In fact, the video of the interview demonstrates the opposite of a coercive or threatening environment: the officers spoke in a friendly tone, laughed, and did not question defendant in an intimidating manner. Further, defendant was offered water or pop during the interview, he was informed multiple times that he did not have to answer the questions, and he was not threatened. And, while defendant was 17 years old at the time of the interview, his age is only one of the relevant factors to be considered within the totality of the circumstances. See *id*. Defendant's age is outweighed by other factors such as his experience with the police and the lack of threats from the police.

With respect to defendant's claim that he was under the influence of various substances, Detective Peter Boterenbrood testified that defendant did not appear to be high in any way during the interview, that defendant did not have a glassy appearance in his eyes, and that defendant did not appear tired, exhausted, or "anything like that." Similarly, Detective Kory Luker testified that, as a police officer, he observed people under the influence of narcotics numerous times, that one can often tell when someone is under the influence, and that defendant did not appear under the influence of narcotics in any way during the interview. Luker further testified that defendant's eyes were not bloodshot or red, that defendant was not struggling to speak, that defendant did not appear to be lethargic, that defendant did not have difficulty walking in or out of the room, that defendant did not fall asleep, that defendant did not fall out of his chair, and that defendant was able to answer the questions coherently. Notably, near the end of the interview, defendant was asked whether he was under the influence of drugs or alcohol, and he responded, "No."

Considering the totality of the circumstances based on the facts apparent from the record, there is nothing to suggest that defendant's statements were the product of police coercion. *Id*. at 264-265. Rather the record demonstrates that they were "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. Moreover, defendant was read his *Miranda* warnings, and he stated that he understood his Fifth Amendment rights. Therefore, defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights and a motion to suppress would have been meritless. Because counsel will not be rendered ineffective for failure to file a meritless motion, defendant was not denied the effective assistance of counsel. *Collins*, 298 Mich App at 470.

### 3. COUNSEL'S FAILURE TO ASK CERTAIN QUESTIONS

Third, defendant "asserts that he asked counsel to ask certain questions during trial." This argument invokes an issue of trial strategy as "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "[W]ith regard to trial strategy and tactics," trial counsel has "great discretion in the trying of a case." *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994). Further, defendant has not explained or indicated on appeal what questions he wanted defense counsel to ask. Accordingly, defendant has not overcome the presumption that defense counsel's decisions regarding the questioning of

witnesses was sound trial strategy. *Id.* Counsel's performance did not fall below an objective standard of reasonableness in this regard.

### 4. COUNSEL'S FAILURE TO CALL ALIBI WITNESSES

Defendant lastly argues that counsel was ineffective for failing to call two alibi witnesses. With respect to this alleged deficiency, defendant's affidavit attached to his brief on appeal states that he "asked [his] attorney to call [his] sister, Lynitra Quinn, as [his] alibi witness, but he did not" and that he "told [his] attorney James Marek that [he] had an alibi: Keith Washington and Lynitra Quinn." As mentioned above, the decision to call a witness is presumed to be a matter of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). The failure to call a witness only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *Id.* A substantial defense is one that might have made a difference in the outcome of trial. *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). Assuming that defendant's alibi witnesses exist and were willing to testify, defendant has not provided any affidavits from these proposed alibi witnesses regarding their proposed testimony. Because "[t]here is no evidence that the alibi witness[es] would have testified favorably," *Pickens*, 446 Mich at 371, defendant has not demonstrated he was denied a defense that might have made a difference in the outcome of trial. As such, defendant has not established ineffective assistance of counsel. *Grant*, 470 Mich at 485-486.[3]

### C. SENTENCING

Finally, defendant argues that he is entitled to resentencing under *Lockridge* because the trial court engaged in impermissible judicial fact-finding in scoring OVs 3, 4, 7, and 13.[4] Unlike in *Lockridge*, defendant preserved this issue through a motion to remand, see *People v Terrell*, 312 Mich App 450, 464; 879 NW2d 294 (2015), thus we review his claims for harmless error. *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015).

The core holding of *Lockridge* is that the sentencing guidelines are unconstitutional to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables . . . that *mandatorily* increase the floor of the guidelines minimum sentence range[.]" *Lockridge*, 498 Mich at 364. To remedy this constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the guidelines mandatory. *Id.* at 391. Although the guidelines are no longer mandatory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion" and thus the trial court must still score the guidelines and "consult the applicable guidelines range and take it into account when imposing a sentence." *Id.* at 391.

---

[3] We reject defendant's alternative argument requesting a remand for a *Ginther* hearing because we previously denied defendant's request for a remand. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

[4] Defendant also argues that OVs 10 and 16 were also impermissibly scored by the use of judicial fact-finding. However, OVs 10 and 16 were assessed 0 points.

With regard to OV 3, the trial court scored 10 points because it found that "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Here, no portion of the jury's verdict necessarily found that bodily injury requiring medical treatment occurred to a victim. Indeed, none of the elements needed to convict defendant of armed robbery, unlawful imprisonment, or felony-firearm established the scoring of OV 3. In addition, defendant did not admit that bodily injury requiring medical treatment occurred to a victim. While defendant admitted in the police interview and apology letter to beating Ferguson, defendant denied committing the offense and testified that his statements to the police and in the apology letter were false. Accordingly, the trial court's score of OV 3 was based on facts that were neither found by the jury nor admitted by defendant.

Next, defendant argues, and the prosecution concedes, that OV 4 and OV 7 were improperly assessed 10 and 50 points respectively. OV 4 requires a finding that serious psychological injury requiring professional treatment occurred to a victim to support a score of 10 points. MCL 777.34(1)(a). OV 7 is properly scored 50 points when a victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense. MCL 777.37(1)(a). The jury's verdict is silent regarding whether psychological injury requiring professional treatment occurred to the victim or whether the victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense. In addition, defendant did not admit the facts necessary to support a scoring of OVs 4 and 7. Therefore, OVs 4 and 7 were scored based on judicially found facts.

Defendant also challenges the scoring of OV 13. The trial court assessed 25 points for OV 13, which requires a finding that "[t]he offense was part of a pattern of felonious criminal activity involving three or more crimes against a person." MCL 777.43(1)(c). While armed robbery and unlawful imprisonment are crimes against a person, see MCL 777.16y and MCL 777.16q, felony-firearm is not. Thus, three crimes against a person were not found by the jury. In addition, defendant did not admit to a third crime that constitutes a crime against a person. While defendant admitted to police officers that he committed an additional armed robbery that occurred at McCrea Park, defendant subsequently testified at trial that his statements to police officers were not true. Therefore, defendant did not admit to having committed a third crime against a person. Thus, the facts used to support the scoring of OV 13 were not admitted by defendant or found by the jury beyond a reasonable doubt.

It is clear that 95 out of the 130 points assessed for defendant's OV score were assessed solely based on judicially found facts. Without judicial fact-finding, defendant's OV score would have been 35 points, and the minimum range calculated under the sentencing guidelines range would have been 81 to 135 months instead of 171 to 285 months. See MCL 777.62; MCL 777.68. Clearly, defendant's minimum sentence range was altered by the Sixth Amendment violation, and defendant is entitled to a *Crosby*[5] remand. *Lockridge*, 498 Mich at 395-399; *Stokes*, 312 Mich App at 198-199.

---

[5] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by [MCR 6.425], if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Lockridge*, 498 Mich at 398 (quotation marks and citation omitted).]

We affirm defendant's convictions and remand solely for further inquiry as to whether resentencing is required. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Patrick M. Meter