COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ELIJAH EKWAUN BEAUFORD,

        Defendant-Appellant.

UNPUBLISHED
December 27, 2016

No. 329045
Berrien Circuit Court
LC No. 2014-005179-FH

Before: BORRELLO, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree home invasion. MCL 750.110a(3). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 43 to 240 months' imprisonment. For the reasons set forth in this opinion, we affirm.

A. FACTS

At approximately 10:30 a.m. on December 17, 2014, in Benton Harbor, Michigan, Melissa and Louis Atkins were sitting in their van outside their home on Apple Street, waiting for a repairman to arrive. As they waited, they saw two young African American men walk toward them on Apple Street. One of the men went to the front door of the house at 166 Apple Street, which was across the street from where the Atkins were sitting. The other man went to the back of the house. Melissa testified at trial that she thought the men looked suspicious because she had lived in the neighborhood for several years and she did not recognize them. After a few minutes observing the home, the men walked away and then returned with two additional young African American men. Melissa testified that the men wore black coats and hooded sweatshirts of various colors. The men went to the back of the house. Atkins then heard a "boom," and Louis called 911. Melissa testified that she saw defendant stick his head out of one of the windows at the house. Police arrived a few minutes later and the four men fled the area. One of the perpetrators carried a television out of the house and left it in an alley behind the residence as he fled the scene.

Approximately five minutes after Louis called 911, police arrived and three of the four men ran away in the direction from which they had come. One of the four men ran in a different direction. The three men who ran together hid behind a neighbor's vehicle on Colfax Street,

-1-

which was perpendicular to Apple Street. Louis testified that after the men fled, police came from all directions and arrested them.

Melissa identified defendant in the courtroom as being one of the four men at 166 Apple Street on December 17, 2014, she testified that she recognized defendant's face. However, she could not remember what color sweatshirt defendant was wearing that day. Louis testified that defendant was one of the four men that broke into the house at 166 Apple Street on December 17, 2014, he identified defendant in the courtroom on the day of trial. Louis testified that he could not recall what defendant was wearing on the day of the incident, but he recognized defendant's face.

Officer Brant Downing responded to the 911-call and testified that at approximately 10:55 a.m. he located a man fitting the description of the suspects approximately 1-½ blocks from 166 Apple Street. That man was defendant. Downing arrested defendant and took him to the Benton Harbor police station. Downing testified that defendant was cooperative and that he did not appear to have been running.

Sergeant Joel Deenik of the Benton Harbor Police Department, testified that after the home invasion, a state trooper (presumably Downing) brought three suspects to the Benton Harbor police station. These suspects were defendant, Uriah Beauford, and Richard Farmer. Sergeant Deenik testified that he brought defendant, Farmer, and Uriah to 166 Apple Street so that Melissa, Louis and a man named Eddie Smith, next door to 166 Apple, could identify them. However, Smith was unable to identify the suspects, and the Atkins were not present. Sergeant Deenik then took the three men to the police station and placed them in a holding area. Sergeant Deenik testified that there was a one-way mirror in the holding area. Sergeant Deenik testified that after he placed the three men into the holding room, the Atkins arrived at the police station. Sergeant Deenik brought Louis to the one-way mirror. Louis identified the three men as having been involved in the home invasion. Sergeant Deenik then asked Louis to leave while he brought Melissa to the one-way mirror. Melissa identified the three men as having been involved in the home invasion. Sergeant Deenik testified that the Atkins were not in the same room as each other and that they were approximately 30 feet away from each other when they identified the men. Sergeant Deenik testified that there may have been a closed door between Louis and Melissa when they identified the men, but he was uncertain of that.

Louis testified that after the three men were arrested, he and Melissa went to the police station together. Louis testified that at the police station, he and Melissa observed three men in a room sitting in chairs. The three men were separated from Louis and Melissa by a glass wall. Louis testified that he and Melissa were in each other's presence when they observed the three men. Louis identified all three of the men to police as having been involved in the home invasion. At trial, Louis testified that defendant was one of the three men in the room at the police station whom he identified as having been involved in the home invasion.

Melissa similarly testified that she and Louis went to the police station together shortly after the three men were arrested. She observed three men in a room. Melissa testified that the three men were separated from her by a window. Defendant was among them. Melissa identified the three men to police as having been involved in the home invasion at 166 Apple Street. Melissa testified that she was certain that those men were involved in the home invasion

and that she identified them according to their faces and their clothing. In contrast to Louis's testimony, however, Melissa testified that she believed that she and Louis were not in each other's presence when she identified the three men. Melissa further testified that even though she was not in Louis's presence when he identified the men, she was close enough to hear him do so.

Defendant was charged with second-degree home invasion for the December 17, 2014 incident. On February 10, 2015, the prosecution gave notice of its intent to introduce evidence under MRE 404(b). Specifically, the prosecution sought to introduce evidence that on March 19, 2012, defendant pleaded guilty to breaking and entering a residence on August 8, 2010. The prosecution alleged that in the 2010 breaking and entering, defendant entered through the rear window of the residence and stole a television and a laptop. The prosecution sought to introduce that evidence to show defendant's motive, intent, opportunity, scheme, plan, or system with regard to the December 2014 home invasion.

Following defendant's objection to the proffered 404(b) evidence, the trial court held a hearing and granted the prosecution's motion to admit the evidence. The trial court concluded that evidence of the 2010 breaking and entering was not relevant to show defendant's motive or intent to steal. However, the court admitted the evidence and instructed the jury to consider it only for the purpose of showing defendant's scheme, plan, or system.[1] The trial court concluded that although the evidence was prejudicial to defendant, it did not violate MRE 403.

At trial, Michelle Isom testified at trial that in 2010 she lived at 1277 Jennings Street in Benton Harbor, Michigan. Isom testified that the house was broken into in the summer of 2010 at approximately 12:00 p.m. The house was unoccupied when the home invasion occurred. Isom testified that when she arrived home after the home invasion, she saw that her television and laptop had been taken and that a screen had been removed from a window in a bedroom in the rear of the house. The parties stipulated that defendant participated in the home invasion that occurred at Isom's house on August 10, 2010.

Defendant argued at trial that he was not involved in the December 17, 2014 home invasion. In support of this argument, defendant argued that the Atkins' testimony that defendant participated in the home invasion was not credible. In an effort to show that the Atkins' testimony was not credible, defendant presented evidence that Uriah was at school at the time that the home invasion occurred. Specifically, Officer Nate Williams, a reserve officer for the Benton Harbor School District, testified that on the morning of December 17, 2014, he arrived at Benton Harbor High School ("BHHS") at about 10:00 a.m. and he saw Uriah, a student, at the school that morning. Officer Williams explained that as he left BHHS to respond to a call regarding the home invasion, he saw Uriah in the main hallway of BHHS. Officer Williams testified that it would take approximately 10 minutes to walk from BHHS to 166 Apple Street where the home invasion occurred.

---

[1] At the evidentiary hearing, the court stated that the evidence was also admissible to prove defendant's identity; however, at trial, the court did not instruct the jury that the evidence could be considered for that purpose.

Officer Ronald Dyson testified at trial that on December 17, 2014, he was working at BHHS as a reserve officer. On that day, he was talking to Uriah because Uriah had been kicked out of a class and Officer Dyson was trying to compel Uriah to return to the class and apologize for his behavior. Officer Dyson testified that while he was talking to Uriah, he saw Officer Williams run out of BHHS to respond to the call regarding the home invasion at 166 Apple Street.

Ardale Clark testified that he worked for the Benton Harbor Boys and Girls Club ("BGC") and that he had known defendant for eight years. Clark testified that he drove defendant to the area of Sherman Court and left him there at approximately 10:00 a.m. on the day of the home invasion. Farmer testified that he lived in Sherman Court and that he was defendant's cousin. Farmer testified that he was involved in the home invasion at 166 Apple Street on December 17, 2014, which was close to his address at Sherman Court.

Defendant was convicted and sentenced as set forth above. This appeal ensued.

## B. ANALYSIS

### I. POST-ARREST IDENTIFICATION

Defendant first argues that the post-arrest "show up" at the police station on December 17, 2014, wherein the Atkins' identified defendant as having been involved in the home invasion, was unduly suggestive and inadmissible at trial.

Whether a police identification procedure violated a defendant's due process rights involves an issue of constitutional law, which we review de novo. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Unpreserved non-structural constitutional issues are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). To "challenge an identification on the basis of lack of due process, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Id.*, (quotation marks and citations omitted). This Court has set forth the following factors to consider in determining whether the totality of the circumstances supports that the identification procedure was unfairly suggestive:

> relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation. [*People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998).]

If the pretrial identification procedure was impermissibly suggestive, "testimony concerning that identification is inadmissible at trial. However, in-court identification by the same witness may still be allowed if an independent basis for in-court identification can be

-4-

established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. Our Supreme Court enumerated the following eight factors to determine whether an independent basis for identification exists: (1) the "[p]rior relationship with or knowledge of the defendant[,]" (2) the witness's "opportunity to observe the offense[,]" (3) the "[l]ength of time between the offense and the disputed identification[,]" (4) the degree of accuracy in the "showup description and defendant's actual description[,]" (5) "[a]ny previous proper identification or failure to identify the defendant[,]" (6) any identification before the showup "of another person as defendant[,]" (7) "the nature of the alleged offense and the physical or psychological state of the victim[,]" and (8) "[a]ny idiosyncratic or special features of defendant." *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998), quoting *People v Kachar*, 400 Mich 78, 95-96; 252 NW2d 807 (1977).

In this case, even presuming that the identification procedure was unduly suggestive, defendant cannot show that admission of the identifications affected his substantial rights because there was an independent basis for the Atkins' in-court identification. While the Atkins' had no prior relationship with or knowledge of defendant and defendant did not have any idiosyncratic or special qualities, the Atkins' had ample opportunity to observe the offense and the offenders. Specifically, both Melissa and Louis were outside in their vehicle observing the crime take place. They were parked directly across the street from where the offense took place and both Melissa and Louis observed the perpetrators for several minutes before calling police. Both recognized defendant's face and Melissa recalled seeing defendant look out of a window of the house. Furthermore, both witnesses made in-court identifications during trial, which occurred five months after the offense, which was not a substantial amount of time. Melissa also accurately described defendant to police on the day of the incident. Specifically, she indicated that defendant was wearing a colored hooded sweatshirt and a black coat, which matched the clothing that defendant was wearing when he was arrested a short time after Melissa called 911. In addition, neither Melissa nor Louis previously failed to identify defendant, no other individuals were identified as defendant, and there was no indication that either Melissa or Louis were in an overly-stressful psychological state of mind. *Gray*, 457 Mich at 115-116. Given the totality of these circumstances, there was an independent basis for Melissa and Louis' in-court identifications such that admission of the post-arrest "show-up" did not amount to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 764.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his defense counsel was ineffective for failing to object to admission of evidence of the Atkins' pretrial and in-court identifications of defendant. Because defendant did not move for an evidentiary hearing in the lower court, our review is for mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

A defendant claiming ineffective assistance of counsel must establish that "counsel's performance was deficient," and that "the deficient performance prejudiced the defense" in that there is "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks omitted), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Carbin*, 463 Mich at 600 (citation and quotation marks omitted).

In this case, defense counsel rendered deficient performance by failing to object to admission of the pre-trial identification. Here, the circumstances surrounding the identification procedure were such that a reasonably prudent defense counsel would have raised an objection. Specifically, police did not segregate the eyewitnesses before asking them to identify the suspects and the eyewitnesses incorrectly identified an individual—defendant's brother—who was not involved in the offense. In addition, police did not present a lineup, which would have, at a minimum, reduced the suggestiveness of the procedure. However, although counsel acted deficiently in failing to challenge the identification, defendant has failed to show that but for counsel's failure to object, the result of the proceeding would have been different. *Carbin*, 463 Mich at 600; *Strickland*, 466 US at 668.

At trial, both Melissa and Louis testified that defendant was involved in the home invasion and their in-court identification was properly admitted at trial. In addition, other evidence showed that on the morning of the offense defendant was dropped off near where the home invasion took place. Specifically, Clark testified that, on the morning of the offense, defendant asked for a ride to Sherman Court and Clark drove defendant to Sherman Court. Farmer, defendant's cousin, testified that he lived near Sherman Court, that Sherman Court was near where the home invasion occurred, and Farmer admitted to being involved in the offense. Furthermore, police officers arrived shortly after Melissa called 911 and police arrested defendant in the area where the crime took place. Defendant was wearing clothing that matched the description that Melissa provided. On this record, defendant cannot show that, but for counsel's failure to object to the post-arrest identification procedure,[2] the result of the proceeding would have been different. *Id*.

## III. OTHER-ACTS EVIDENCE

Next, defendant argues that evidence of his involvement in the 2010 breaking and entering was inadmissible. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). However, preliminary questions of law such as whether evidence is admissible under the rules of evidence are reviewed de novo. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). A preserved error requires reversal only if the defendant establishes that it is more probable than not that the error was outcome determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001), citing *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). "An error is deemed to have been 'outcome determinative' if it undermined the reliability of the verdict." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000) (citations omitted).

Evidence of crimes, wrongs, or acts "is inadmissible to prove a propensity to commit such acts." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). However, other-

---

[2] To the extent defendant argues that counsel was ineffective in failing to object to the in-court identifications, this argument lacks merit where, as discussed above, there was an independent basis to support these identifications. See *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010) (counsel is not ineffective for failing to raise a futile objection).

acts evidence may be admissible for a proper purpose under MRE 404(b)(1), *id.*, which provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

To determine admissibility under MRE 404(b), this Court uses the standard outlined in *People v VanderVliet*, 444 Mich 52, 65; 508 NW2d 114 (1993). First, the evidence must be offered "for a proper purpose under Rule 404(b)[.]" *VanderVliet*, 444 Mich at 55. Second, the evidence must be relevant under MRE 402. *Id.* Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. *Id.* Finally, the trial court may provide a limiting instruction to the jury upon request. *Id.*

The trial court admitted the evidence of defendant's involvement in the 2010 breaking and entering for the purposes of showing defendant's scheme, plan or system.[3]

Evidence of prior acts is relevant to show that the prior act "and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000); MRE 404(b)(1). "General similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id.* at 64. Beyond similarity, there must be "*such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*" *Id.* at 64-65, quoting 2 Wigmore Evidence (Chadbourn rev.), § 304, p 249.

In this case, although they shared general similarities, the prior act and the charged offense were not sufficiently similar to show that they were manifestations of a common plan, scheme or system. *Sabin*, 463 Mich at 63. The acts did not share "such a concurrence of common features" that they were "naturally to be explained as caused by a general plan of which they [were] the individual manifestations." *Id*. at 64-65 (quotation marks omitted). Rather, the acts were generally similar spontaneous occurrences. *Id*. at 65-66. Here, the two offenses occurred years apart; they did not involve a string of home invasions; there was nothing to suggest they involved the same group of co-defendants, and instead the crimes appeared to be spontaneous crimes of opportunity. The two home invasions share nothing more than a general similarity. Thus, the other-acts evidence was not admissible under MRE 404(b).

---

[3] As noted above, at the motion hearing, the trial court held that the evidence was also admissible to show identity, however, at the trial, the trial court instructed the jury that the evidence was admissible only to prove defendant acted according to a scheme, plan, or system.

Although the other-acts evidence was admitted in error, defendant has not shown that it is more probable than not that the error was outcome determinative in that it undermined the reliability of the verdict. *Knapp*, 244 Mich App at 378; *Elston*, 462 Mich at 766. In this case, there were two eyewitnesses who testified at trial and identified defendant as one of the perpetrators. As discussed above, these in-court identifications were properly admitted at trial. Furthermore, there was testimony that defendant was dropped off near Farmer's house and near where the crime took place on the morning of the incident. Farmer admitted his involvement in the offense. In addition, police arrived at the scene within minutes of the 911 call and police found defendant in the area near where the crime took place. Defendant was wearing clothing that matched the description that Melissa provided. Based on this evidence, defendant has not shown that admission of the other-acts evidence undermined the reliability of the verdict. *Elston*, 462 Mich at 766.

## IV. SENTENCING

Finally, defendant argues that his offense variable ("OV") 13 was assessed 25 points in violation of the Sixth Amendment. We review this unpreserved argument for plain error. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

Defendant's OV 13 was assessed 25 points. Twenty-five points are properly assessed under OV 13 where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). For purposes of the Sixth Amendment, the fact of a prior conviction need not be found by a jury nor admitted by a defendant to be used to score an OV. *Lockridge*, 498 Mich at 370.

According to defendant's PSIR, within the five-year period from his December 17, 2014 offense, defendant pleaded guilty to a breaking-and-entering offense that occurred on August 10, 2010 (the other-acts evidence); he pleaded guilty to a second-degree home invasion offense that occurred on October 5, 2010; he was convicted of a charge of attempted assaulting, resisting, and obstructing a police officer for an offense that occurred on June 17, 2011; he pleaded to charges of carrying a concealed weapon and possession of a firearm by a felon for offenses that occurred on November 18, 2011; and he was convicted of the second-degree home invasion charge in this case. Breaking and entering is a crime against property. MCL 777.16f. Second-degree home invasion is a crime against a person. MCL 777.16f. Assaulting, resisting, and obstructing a police officer is a crime against a person. MCL 777.16x. Carrying a concealed weapon is a crime against public safety. MCL 777.16m. Possession of a firearm by a felon is a crime against public safety. MCL 777.16m. Therefore, within the five-year period of the offense in this case, defendant was convicted of at least three crimes against a person: second-degree home invasion that occurred on October 5, 2010; attempted assaulting, resisting, and obstructing a police officer that occurred on June 17, 2011; and the offense in this case—i.e. second-degree home invasion that occurred on December 17, 2014.

Defendant correctly argues that the trial court engaged in judicial fact-finding when it found that defendant's October 2010 conviction for breaking and entering—a crime against property—constituted a crime against a person that could support a score of 25 points to

defendant's OV 13. However, because defendant had three convictions for crimes against a person within the five-year period of the sentencing offense, no judicial fact-finding was necessary to assess 25 points to defendant's OV 13 and the trial court did not violate defendant's constitutional rights in doing so. MCL 777.43(1)(c); *Lockridge*, 498 Mich at 370.[4]

      Affirmed.


                         /s/ Stephen L. Borrello
                         /s/ Jane E. Markey

---

[4] On appeal, the prosecution concedes that the trial court violated defendant's Sixth Amendment rights when it scored OV 16 at one point based on its findings regarding the value of property that was taken from the home. See MCL 77.46(1)(d). However, defendant does not address OV 16; moreover, even assuming that OV 16 was improperly scored, reducing defendant's total OV score from 26 to 25 would not reduce defendant's guidelines range. MCL 777.64. Therefore, defendant's guidelines range was not constrained by this constitutional violation, and the violation does not constitute plain error. *Lockridge*, 498 Mich at 395.