## PEOPLE v THOMAS

1. CRIMINAL LAW—EVIDENCE—EXCULPATORY STATEMENT—TAPE RE-CORDING—PROSECUTOR'S REMARKS.

A prosecutor's repeated references to a tape-recorded exculpatory statement made by defendant while he was in police custody did not constitute reversible error where defense counsel neither sought curative instructions nor objected to the prosecutor's references, and where defense counsel had stipulated to the admission of the transcript of defendant's taped statement with certain deletions, and the jury was never informed that they were not hearing the complete contents of the tape recording.

2. CRIMINAL LAW—LINEUPS—IDENTIFICATION—PRESENCE OF COUNSEL.

An accused has the right to have his counsel present at post-indictment lineups conducted for identification purposes.

3. CRIMINAL LAW—EVIDENCE—EXCULPATORY STATEMENT—TAPE RE-CORDING—VOICE IDENTIFICATION—ILLEGAL CONFRONTATION.

Playing a tape recording of a defendant's exculpatory statement to a witness after defendant's indictment but prior to trial for voice identification purposes was equivalent to a post-indictment lineup, and the confrontation was illegal where defendant was not afforded the opportunity to have counsel present.

4. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—APPEAL AND ERROR.

As a general rule when the question arises on appeal as to whether a witness had sufficient independent basis for subsequent in-court identification, the case is remanded for an evidentiary hearing on the matter.

5. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—VOICE IDENTIFICA-TION.

There was no sufficient basis independent of an illegal confronta-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 29 Am Jur 2d, Evidence § 436.

   Admissibility of sound recordings in evidence, 58 ALR2d 1032.

[2] 21 Am Jur 2d, Criminal Law § 368.

[4, 5] 30 Am Jur 2d, Evidence § 1143.

tion to make a subsequent in-court identification of the defendant where the witness had never spoken to the defendant prior to the day a threatening telephone call was placed by an extortionist, the witness did not identify the voice on the telephone and the voice on the tape recording as being the same but only indicated the voices were similar, and where nearly two months had elapsed between the extortionist's telephone call and the voice identification at police headquarters.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 October 11, 1972, at Lansing. (Docket No. 11886.) Decided February 20, 1973.

Robert J. Thomas was convicted of extortion. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*William P. Ward,* for defendant on appeal.

Before: DANHOF, P. J., and BRONSON and T. M. BURNS, JJ.

T. M. BURNS, J. Defendant was convicted by a jury of extortion pursuant to MCLA 750.213; MSA 28.410. He was sentenced to a term of from 10 to 20 years imprisonment and appeals as of right.

At 1:45 p.m. on November 25, 1970, an individual identifying himself as Mike Russell telephoned the Mount Clemens Savings Bank. The caller spoke to the assistant vice-president, Mr. George Frendt, and informed him that unless $25,000 was taken from the bank and left in a specified church,

a bomb which had been placed in the bank would be detonated.[1]

The Mount Clemens police were immediately summoned; and according to their instructions, Mr. Frendt went to the church, placed an attaché case containing a telephone book near one of the pews, where it could not be easily detected, and departed. In addition, two police officers concealed themselves behind the altar. A few minutes later the defendant entered the church, walked down the center aisle, observed the attaché case, picked it up and started to leave. The two policemen appeared and arrested the defendant.

While the defendant was in custody, he tape-recorded a statement for the police. Its main thrust was to the effect that the defendant had been in and about the church a half hour before his arrest, he had spotted the attaché case by accident and was taking it to the rectory when arrested. In response to police questioning, the defendant denied telephoning the Mount Clemens Savings Bank and also denied any knowledge of explosives.

One week prior to the defendant's trial, Mr. Frendt, the bank employee who had received the extortionist's telephone call, was summoned to police headquarters to listen to the tape recording of the defendant's statement. The tape was played and Mr. Frendt indicated that the voice on the tape was similar to the voice of the person who had called the bank announcing the bomb threat.

At trial, over defense counsel's objection, Mr. Frendt reiterated that the voice of the extortionist and the voice on the tape recording were similar. Also at trial after consulting with defense counsel

---

[1] The bank was subsequently evacuated; however, no bomb was found.

and the trial judge, the prosecution had an edited transcript of the defendant's tape-recorded statement read into the record.

The case went to the jury on February 9, 1971, and on the same day, it returned a verdict of guilty. The issues raised by the defendant will be discussed and decided in the manner presented below.

1. *Was it reversible error for the prosecuting attorney to refer to defendant's tape-recorded statement where the tape itself was not admitted into evidence but a transcript of the statement with objectionable portions deleted was read into the record?*

The defendant contends that the prosecution's repeated references to the defendant's tape-recorded statement resulted in an unfair trial.[2] We disagree.

Defense counsel in the instant case neither sought curative instructions nor objected to the prosecution's references to the tape recording. Therefore, the defendant is precluded from raising this issue on appeal. *People v White,* 25 Mich App 176 (1970).

While we will consider manifest or serious errors without the necessity of an objection being made, no errors of such magnitude exist here. Defense counsel stipulated to the admission of the transcript of defendant's tape-recorded statement after the inadmissible portions had been deleted. An examination of the record herein indicates that the jury was never informed that they were not hearing the complete contents of the tape recording. Consequently, the defendant has not shown

---

[2] An examination of the record indicates that the prosecutor made four references to the defendant's tape-recorded statement.

any prejudice by virtue of the prosecution's references to the tape recording.

This issue raised here for the first time on appeal is therefore without merit.

2. *Should the bank employee's in-court voice identification testimony have been excluded from evidence because the defendant's tape-recorded statement was played to the witness before trial for identification purposes without notice to and in the absence of the defendant's appointed counsel?*

Finally, the defendant argues that when the bank employee who had received the extortionist's telephone call went to police headquarters to listen to defendant's tape-recorded statement, this was a confrontation for identification purposes and as a result under the Sixth Amendment of the United States Constitution, he had a right to have counsel present. From this, the defendant further asserts that since defense counsel was not given the opportunity to be present, it was error to receive the bank employee's voice identification testimony. We agree.

At the outset it must be noted that defense counsel failed to object to the voice identification testimony of the bank employee on the ground that the defendant had not been afforded the opportunity to have counsel present at the alleged confrontation. The usual consequence of this failure precludes appellate review. *People v Adams,* 19 Mich App 131 (1969). However, we have repeatedly held that the failure to object at trial does not foreclose this Court from reviewing a claim where, as here, a constitutional right is likely to have been infringed. *People v Cotton,* 38 Mich App 763 (1972); *People v Schumacher,* 29 Mich App 594 (1971); *People v Limon,* 4 Mich App 440 (1966).

Therefore, we next come to grips with the question of whether the defendant was entitled to have counsel present at police headquarters when the bank employee identified defendant's voice on the tape-recorded statement as being similar to the voice of the extortionist. In approaching this problem two questions must be resolved; namely, (1) does the right to counsel exist in post-indictment confrontations conducted for the purpose of identification, and (2) was playing the tape recording of defendant's statement to the bank employee for the purpose of a voice identification such a confrontation?

*United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), were the first major decisions in the area of an accused's right to counsel during pretrial identification procedures. In both cases it was held that an accused has the right to have counsel present at post-indictment lineups conducted for identification purposes. Mr. Justice Brennan, speaking for the Court in *Wade, supra,* set forth the rationale underlying the role when he wrote:

"But the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." 388 US at 228.

\* \* \*

"The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal

from the judgment there rendered by the witness—'that's the man'." 388 US at 235.

Having ascertained that an accused has the right to the presence of counsel at post-indictment lineups conducted for identification purposes, the other question which confronts us is whether playing the defendant's tape-recorded statement to the bank employee was the type of confrontation for identification purposes that requires the presence of counsel.

In the case at bar, the bank employee who had received the extortionist's telephone call could not, of course, visually identify the defendant. The only way he could identify the defendant was by a comparison of the voice he had heard on the telephone with the voice he heard on the defendant's tape-recorded statement. We cannot perceive any distinction between these facts and those occurring in a lineup save for the medium used to identify the accused. The medium used to make a post-indictment identification of an accused, however, is not controlling. Intentional or unintentional overreaching and irreparable prejudice sought to be eradicated in post-indictment identification lineups by requiring the presence of defense counsel (See *Wade* and *Gilbert, supra)* can occur during the absence of counsel whether the post-indictment identification is made by the eye or the ear. The facts of the instant case amply demonstrate this point.

The tape recording of the defendant's statement to the police was inherently and impermissibly suggestive. There were only three voices on the tape. Two voices asking questions were those of the interrogating police detectives. The third voice answering the questions was that of the defendant. The inference the bank employee could easily

draw is patent—the police had the individual in custody who had picked up the attaché case, the man who picked it up was the extortionist, and that man was answering the questions on the tape. Such an inference could have easily have been prevented had defendant's counsel been present and requested tapes of other voices be played to the bank employee.

In view of the foregoing, we hold that playing the defendant's tape-recorded statement to the bank employee for voice identification purposes one week prior to trial was equivalent to a post-indictment lineup and as such under the doctrine of *Wade* and *Gilbert, supra,* the confrontation was illegal since defendant was not afforded the opportunity to have counsel present.

Inasmuch as the requisite preliminary questions have been decided, we can now properly address ourselves to the more precise question of the case which is, given the fact that the post-indictment voice identification confrontation was violative of the defendant's rights, should the bank employee's subsequent in-court voice identification testimony have been excluded from the jury's consideration.

A prior confrontation which is violative of an accused's rights will not per se render a witness's subsequent in-court identification testimony inadmissible. A witness's later in-court identification testimony is nonetheless admissible under such circumstances if the witness had a sufficient basis independent of the illegal confrontation for identifying the accused. *People v Hutton,* 21 Mich App 312 (1970).

The factors to be considered in determining whether the witness had a sufficient independent basis were set forth in *Hutton, supra,* at 326, as follows:

"And among the facts to be considered in applying

this test are: the witness's prior opportunity to observe the alleged criminal act; the existence of any discrepancy between any pretrial description and the defendant's actual appearance; any identification of another person before confrontation; photogenic identification before confrontation; failure to identify the defendant on a prior occasion; and the lapse of time between the alleged act and the confrontation identification."

As a general rule when the question arises on appeal as to whether a witness had a sufficient independent basis for a subsequent in-court identification, the case is remanded for an evidentiary hearing on the matter. *People v Hutton, supra; People v Eddie Smith,* 35 Mich App 283 (1971). After an examination of the record herein, remanding the case back for an evidentiary hearing on the question of whether the bank employee had a sufficient independent basis would be an idle act.

Applying the criteria set forth in *Hutton* to the present case, it is abundantly clear that the bank employee who received the extortionist's telephone call did not have a sufficient basis independent of the illegal confrontation to make a valid subsequent in-court identification of the accused. There is no evidence that the bank employee had spoken with the defendant on any occasion prior to the day the threatening telephone call was placed by the extortionist. He did not identify the voice on the telephone and the voice on the tape recording as being the same voice. He only indicated the voices were similar. Furthermore, nearly two months had elapsed between the extortionist's telephone call and the voice identification at police headquarters.

In view of the foregoing, the case is reversed and remanded for a new trial at which the bank employee's in-court voice identification testimony shall be excluded.

All concurred.