PEOPLE v KEVIN WILLIAMS

Docket No. 221876. Submitted July 11, 2000, at Detroit. Decided February 2, 2001, at 9:15 A.M.

Kevin D. Williams, charged in the St. Clair Circuit Court with assault with intent to commit sexual penetration, moved for the suppression of the complainant's identification of the defendant. The complainant had identified the defendant as her assailant after listening to a tape recording of an interview of the defendant conducted by the police after a tracking dog led them from the complainant's house to the defendant's house nearby shortly after the assault. At the time of the interview, the defendant was not under arrest, was not in custody, had not been indicted or charged, and was not told that the interview was being recorded. Before playing the recording for the complainant, the police had told her that she would hear the voices of two police officers and a suspect, but had not indicated whose voice was whose. The court, James P. Adair, J., granted the motion to suppress, finding that the defendant had a constitutional right to have counsel present at the voice identification, that the right was violated, and that the tape recording was impermissibly suggestive. On the prosecution's motion for nolle prosequi, the court dismissed the charge without prejudice. The prosecution appealed.

The Court of Appeals *held*:

1. The trial court erred in finding that the defendant was entitled to have counsel present at the voice identification. The right to counsel under US Const, Am VI and Const 1963, art 1, § 20 does not apply to the voice identification procedure in this case because adversarial proceedings had yet to be initiated against the defendant at the time of the identification procedure. The right to counsel under US Const, Am V and Const 1963, art 1, § 17 is designed to counteract the inherently compelling pressures of custodial interrogation and secure a person's privilege against self-incrimination by allowing a suspect to converse with the police only through counsel. Just as this right to counsel does not apply to precustodial, investigatory, photographic identifications, it does not apply to the precustodial voice identification procedure conducted in this case.

2. The trial court did not err in finding that the tape recording was impermissibly suggestive. An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. In this case, the tape recording was inherently suggestive inasmuch as the complainant was told she would hear the voices of two police officers and the primary suspect, and she could tell that the two persons asking questions were police officers and the person answering questions was the suspect.

Affirmed.

1. CONSTITUTIONAL LAW — RIGHT TO COUNSEL — PRECUSTODIAL VOICE IDENTIFICATION.

An accused's constitutional right to counsel does not entitle an accused who is not in police custody to have counsel present at a procedure in which the accused is identified as the perpetrator on the basis of the sound of the accused's voice (US Const, Ams V and VI; Const 1963, art 1, §§ 17 and 20).

2. CONSTITUTIONAL LAW — DUE PROCESS — SUGGESTIVE IDENTIFICATION PROCEDURES.

An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Peter R. George*, Prosecuting Attorney, and *Timothy K. Morris*, Assistant Prosecuting Attorney, for the people.

*Kenneth M. Lord*, for the defendant.

Before: BANDSTRA, C.J., and GAGE and WILDER, JJ.

WILDER, J. The prosecution appeals as of right from an order dismissing the charge of assault with intent to commit sexual penetration, MCL 750.520g(1); MSA 28.788(7)(1), entered after the trial court granted

defendant's motion to suppress evidence of a voice identification.[1] We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

On the evening of September 26, 1997, the victim was working as a waitress at a bar when defendant approached her and carried on a brief conversation with her, stating that he lived two houses down from her. At approximately 2:30 A.M., the victim left work and drove to her home in Marine City, Michigan. As she opened the car door to get out of her vehicle, she heard footsteps behind her and observed a person wearing a ski mask running toward her. The assailant pulled the victim out of her vehicle, causing her to hit her head on the vehicle's rocker panel and black out momentarily. The assailant then picked up the victim, placed her face down in the vehicle and attempted to remove her pants. The victim managed to talk the attacker into following her into her home. The victim got close enough to the house to set off the motion detector lights, causing the assailant to flee. The victim ran into her house and immediately called the police to report the incident. The victim informed the police that all she could recall about the assailant was that he was wearing a ski mask and a blue one-piece outfit, but that she listened carefully to the assailant's voice.

The police arrived at the victim's home with a tracking dog that followed a trail to defendant's home, two doors down from where the victim lived. A

---

[1] The trial court dismissed the case without prejudice following the prosecutor's assertion that it could not proceed without the suppressed evidence.

pair of blue overalls matching the description given by the victim was found on defendant's back porch. The officers went to defendant's home to question him about the incident. Defendant voluntarily submitted to an interview by the police that was tape-recorded without defendant's knowledge. During the interview, defendant admitted being at the bar where the victim worked, but denied any involvement in the attack. Defendant then gave the police the shoes he was wearing that night, which were wet and had grass clippings on them.[2] Defendant also indicated that he owned a ski mask and he produced it for the police. Defendant was not taken into custody at that time.

Later that morning, the police played the taped interview, which contained only the voices of the police officers and defendant, for the victim. The police told the victim that the tape contained the suspect's voice, but did not tell her which voice belonged to whom. After listening to several minutes of the tape recording, the victim identified defendant's voice as the voice of her attacker. The victim admitted that she was able to identify which voices belonged to the officers because they were asking questions and defendant was the only person responding. The police also showed the victim the ski mask and overalls obtained from defendant. The victim identified the overalls as those worn by her attacker, but was unable to identify the ski mask.

At the preliminary examination, the district court rejected defendant's argument that the voice identifi-

---

[2] There was evidence in the record that the victim's lawn had been cut that afternoon and the ground was wet with dew.

cation was inadmissible because it was highly suggestive, and bound defendant over for trial. Defendant then filed a motion to suppress the voice identification in the circuit court, arguing that the identification was impermissibly suggestive because the tape contained only the voices of defendant and the police officers. The prosecution responded that the voice identification was analogous to an on-the-scene lineup, which was permissible. The circuit court first found that defendant had the right to have counsel present at the voice identification because no emergency required the police to play the tape for the victim in the way that they did. The circuit court further found that the tape recording was impermissibly suggestive because the only conclusion the victim could reach was that the voice on the tape was her assailant's. Therefore, the circuit court granted defendant's motion to suppress the voice identification and dismissed the case without prejudice. The prosecution challenges the circuit court's findings that defendant had the right to have counsel present at the voice identification and that the tape recording was impermissibly suggestive.

## II. STANDARD OF REVIEW

A trial court's decision to suppress evidence on legal grounds is reviewed for clear error. *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996). A trial court's finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake has been made. *Id.*

### III. DISCUSSION

#### A. RIGHT TO COUNSEL

The prosecution argues that this is a case of a precustody identification to which no right to counsel attaches and that the trial court therefore erred in finding that defendant was entitled to have counsel present at the voice identification. We agree.

In Michigan, a criminal defendant's right to counsel has two important constitutional sources. The best known source is the Sixth Amendment of the United States Constitution, which provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of counsel for his defence." US Const, Am VI. The 1963 Michigan Constitution includes language similar to that of the Sixth Amendment in article 1, § 20, which states that "[i]n every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense . . . ."

The second source of a criminal defendant's right to counsel is not found in the text of the Sixth Amendment, but is a prophylactic right found in the Supreme Court's jurisprudence relating to the Fifth Amendment right against compelled self-incrimination and to due process, US Const Am V, and its Michigan corollary in Const 1963, art 1, § 17. The Fifth Amendment right to counsel is distinct and not necessarily coextensive with the right to counsel afforded criminal defendants under the Sixth Amendment. *People v Bladel (After Remand)*, 421 Mich 39, 50-51; 365 NW2d 56 (1984); *People v Marsack*, 231 Mich App 364, 372; 586 NW2d 234 (1998). Indeed, the Fifth Amendment right to counsel during a custodial interrogation

serves an entirely different purpose than the Sixth Amendment right to counsel at trial. The right to counsel found in the Fifth Amendment "is designed to counteract the 'inherently compelling pressures' of custodial interrogation," *McNeil v Wisconsin*, 501 US 171, 176; 111 S Ct 2204; 115 L Ed 2d 158 (1991), citing *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and to secure a person's privilege against self-incrimination by allowing a suspect to elect to converse "with the police only through counsel." *McNeil, supra* at 176. The procedural safeguards for this right to counsel adopted in *Miranda* require that the police discontinue the questioning of a suspect when a request for counsel is made. These safeguards, however, apply only when there is a custodial interrogation of a suspect. *Marsack, supra* at 374.

Because adversarial proceedings had not been initiated against defendant at the time of the voice identification in this case, the Sixth Amendment right to counsel is not implicated. Rather, the decision whether defendant was entitled to have counsel present at the voice identification requires an examination of the right to counsel afforded under the Fifth Amendment. Michigan courts have found a general right to counsel during pretrial identification procedures, including photographic lineups when the suspect is in custody, with notable exceptions. *People v Anderson*, 389 Mich 155, 187; 205 NW2d 461 (1973). In *Anderson, supra* at 187, n 23, our Supreme Court recognized three exceptions to a suspect's right to counsel at identification procedures: (1) intelligent waiver of the right to counsel, (2) emergency situations requiring immediate identification, and (3) prompt, on-the-scene corporeal identifications within

minutes of the crime. Further, no right to counsel exists for precustodial, investigatory, photographic identifications. *People v Lee*, 391 Mich 618, 625; 218 NW2d 655 (1974); *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). More recently, this Court has held that "it is proper and does not offend the *Anderson* requirements for the police to promptly conduct an on-the-scene identification." *People v Winters*, 225 Mich App 718, 727; 571 NW2d 764 (1997).

An important distinction exists, however, between the instant case and the typical on-the-scene identification. In virtually every case addressing the issue of the right to counsel at prompt, on-the-scene corporeal identifications, the defendant had already been taken into custody by the police before being identified by the witness. *Winters, supra* at 721; *People v Wilki*, 132 Mich App 140, 142; 347 NW2d 735 (1984); *People v Turner*, 120 Mich App 23, 34; 328 NW2d 5 (1982); *People v Johnson*, 59 Mich App 187, 189; 229 NW2d 372 (1975); *People v Thomas*, 44 Mich App 649, 654-655; 205 NW2d 604 (1973). By contrast, the few cases that address *precustodial* identifications invariably involve photographic lineups shown to a witness before the defendant's arrest or custodial interrogation, to which the right to counsel does not apply. *Kurylczyk, supra* at 293; *Lee, supra* at 622-623.

In this case, defendant clearly was not in police custody at the time the victim made the voice identification. Although the police suspected defendant as the assailant because a tracking dog led them to defendant's house and some clothing produced by defendant matched the clothing reportedly worn by the attacker, at the time of the voice identification by the victim, defendant had not been arrested and had

not yet been identified by any witness as the attacker.[3] Under these circumstances, we conclude that the voice identification was analogous to a photographic lineup conducted before an arrest, to which the right to counsel does not attach. *Kurylczyk, supra; Lee, supra.*

The trial court's reliance on *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), as justification for finding that defendant had a right to counsel at the voice identification, is misplaced. In *Wade,* the United States Supreme Court held that the accused is entitled to counsel at "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Id.* at 226.[4] However, in *Moore v Illinois,* 434 US 220, 226-227, 231; 98 S Ct 458; 54 L Ed 2d 424 (1977), the Court clarified that the right to counsel at identification procedures only attached once adversarial proceedings were initiated. In this case, no adversarial proceedings had been initiated because defendant had not been arrested or indicted and was not in the custody of the police at the time of the voice identification. Accordingly, *Wade* does not afford defendant any right to counsel under these circumstances. In addition, our Supreme

[3] There is conflicting evidence in the record regarding whether the victim informed the police that she suspected defendant was her attacker before the voice identification. The victim testified during the preliminary examination that she told the police that she suspected defendant because he spoke with her at the bar earlier that evening; however, both police officers involved in this case denied that the victim identified any suspects.

[4] The *Wade* Court specifically held that a pretrial corporeal identification conducted after a suspect has been indicted is a critical stage in a criminal prosecution to which the Sixth Amendment right to counsel attaches.

Court's decisions in *Lee* and *Kurylczyk* illustrate that
the right to counsel is limited to situations where the
prosecution has made some affirmative effort to iden-
tify a criminal defendant, such as by taking the sus-
pect into custody. *Kurylczyk, supra* at 300-301.[5]
Because defendant had not been arrested or taken
into police custody at the time of the voice identifica-
tion, he had no right to counsel at the identification.
Accordingly, the voice identification evidence was
improperly suppressed on that basis.

### B. IMPERMISSIBLY SUGGESTIVE AUDIOTAPE

The prosecution also argues that the trial court
erred in finding that the tape recording was impermis-
sibly suggestive. We disagree.

An identification procedure that is unnecessarily
suggestive and conducive to irreparable misidentifica-
tion constitutes a denial of due process. *Stovall v
Denno*, 388 US 293, 301-302; 87 S Ct 1967; 18 L Ed 2d
1199 (1967); *Kurylczyk, supra* at 302-303; *People v
James*, 184 Mich App 457, 464; 458 NW2d 911 (1990).
In order to challenge an identification on the basis of
lack of due process, "a defendant must show that the
pretrial identification procedure was so suggestive in
light of the totality of the circumstances that it led
to a substantial likelihood of misidentification."
*Kurylczyk, supra* at 302; see also *Lee, supra* at 626. If
the trial court finds the procedure was impermissibly
suggestive, evidence concerning the identification is

---

[5] Our conclusion is further supported by case law from other jurisdic-
tions affirming that no right to counsel exists for precustodial voice iden-
tifications. See *State v Hoffpauir*, 44 Wash App 195; 722 P2d 113 (1986);
*State v Packard*, 184 Conn 258, 267; 439 A2d 983 (1981).

inadmissible at trial unless an independent basis for in-court identification can be established "that is untainted by the suggestive pretrial procedure." *Kurylczyk, supra* at 303.

Defendant lists several factors he contends created the aura of suggestiveness. First, defendant notes that the police told the victim that the suspect's voice was on the tape before playing the tape. However, this characteristic, alone, does not make the identification impermissibly suggestive. See *McElhaney, supra* at 287.

Second, defendant cites the fact that the victim was shown the overalls and the ski mask at the same time the tape was played. The record is unclear whether the victim viewed these objects before or after hearing the tape. Without more definitive proof that the objects were shown to the victim before she listened to the tape, we are unable to conclude that this was an unduly suggestive element.

Third, defendant argues that the tape was impermissibly suggestive because it only revealed three voices and two of the voices were police officers' and one was the suspect's. We agree with defendant that this characteristic of the identification was highly suggestive. In *People v Thomas*, 44 Mich App 649, 650-651; 205 NW2d 604 (1973), a bank employee received a telephone call from an individual who threatened to detonate a bomb at the bank unless $25,000 was left in a specified church. With the assistance of the police, the bank employee left a briefcase in the church, and the defendant was arrested when he showed up to collect the money. *Id.* at 651. While the defendant was in custody, the police tape-recorded his statement. *Id.* One week before the defendant's

trial, the tape-recorded statement was played for the bank employee, who indicated that the voice on the tape was similar to the voice of the caller. *Id.* This Court found that the tape was "inherently and impermissibly suggestive," noting the obvious problems:

> There were only three voices on the tape. Two voices asking questions were those of the interrogating police detectives. The third voice answering the questions was that of the defendant. The inference the bank employee could easily draw is patent—the police had the individual in custody who had picked up the attaché case, the man who picked it up was the extortionist, and that man was answering the questions on the tape. [*Id.* at 655-656.]

We find that the same impermissibly suggestive circumstances that were present in *Thomas* exist in the instant case. Only three voices were on the tape played to the victim. The two voices asking questions were those of the interrogating police officers and the third voice answering the questions was that of defendant. No other voices were played for comparison. Further, before playing the tape, the police informed the victim that the primary suspect's voice was on the tape and that two of the voices were police officers'. Although the police did not state which voice belonged to defendant, the victim admitted that she could easily determine that the officers were the two individuals asking questions and the one person responding was defendant. On this record, it was not clear error for the trial court to find that the victim was influenced by the inherently suggestive nature of the identification. See also *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (the exhibition of a single photograph to a victim was one of the most suggestive procedures that can be used). Accordingly,

the trial court did not err in suppressing the voice identification as impermissibly suggestive or in dismissing the case without prejudice.[6]

Affirmed.

---

[6] In light of the trial court's order suppressing the pretrial voice identification and dismissing the case before trial, the question whether the voice identification had an independent basis for admission at trial was not decided by the trial court and is therefore not an issue on appeal.