# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
November 29, 2018

v

DONTEZ MARTELL HOWARD,

      Defendant-Appellant.

No. 338289
Genesee Circuit Court
LC No. 16-039451-FC

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

A jury convicted defendant of two counts of first-degree criminal sexual conduct, MCL 750.520b (multiple variables) ("CSC-I"), and unarmed robbery, MCL 750.530. The trial court sentenced defendant to 450 months to 60 years in prison for the CSC-I convictions and 10 to 15 years in prison for the unarmed robbery conviction.[1] Defendant appeals by right; we affirm.

## I. IDENTIFICATION

Defendant first argues on appeal that admission of evidence of defendant's identification the complainant (SW) made at the scene of his arrest at a bus terminal was erroneous. Defendant claims that the identification was so unduly suggestive as to deny him due process because (1) SW made the identification when defendant and codefendant were standing alone by a police car, and (2) there was no need for an immediate identification because defendant could have been arrested for resisting arrest. Defendant also claims that because of the suggestiveness of the identification at the bus terminal, there was no independent basis for SW's in-court identification of him, and its admission into evidence was erroneous. We disagree. Defendant's unpreserved claims regarding the identifications are reviewed for plain error affecting his substantial rights. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).

---

[1] Defendant's codefendant, Scott Devontae-Marquez Gill, pleaded guilty to CSC-I and a sentence agreement of a minimum of 15 years in prison. In exchange, he agreed to testify truthfully in defendant's case.

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). To challenge an identification on due process grounds, a defendant must establish that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). To conduct this analysis, a court may consider various factors, including:

> "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness'[s] degree of attention, [3] the accuracy of the witness'[s] prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." [*Id*. at 306, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

In *People v Winters*, 225 Mich App 718, 727; 571 NW2d 764 (1997), this Court observed that on-the-scene identifications promote fairness because they

> are reasonable, indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance. Whatever the perceived problems of on-the-scene confrontations, it appears to us that prompt confrontations will, if anything, promote fairness by assuring greater reliability.

When a court finds that an identification procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial but "in-court identification by the same witness still may be allowed if an independent basis can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. Courts should consider the totality of the circumstances when determining whether an independent basis exists for the admission of an in-court identification, including: (1) the witness's prior knowledge of the defendant, (2) the witness's opportunity to observe the criminal during the crime (including length of time of the observation, lighting, noise or other factors affecting sensory perception and proximity to the alleged criminal act), (3) the length of time between the crime and the disputed identification, (4) the witness's level of certainty at the prior identification, (5) discrepancies between the pretrial identification description and the defendant's actual appearance, (6) any prior proper identification or failure to identify the defendant, (7) any prior identification of another as the culprit, (8) the mental state of the witness at the time of the crime (including fatigue, nervous exhaustion, alcohol and drugs, and age and intelligence of the witness), and (9) any special features of the defendant. *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998); *People v Kachar*, 400 Mich 78, 95-96; 252 NW2d 807 (1977).

SW had met defendant, albeit briefly, on the evening before the crimes at the bus terminal. According to both SW and codefendant, SW also had ample opportunity to view defendant at the time of the crime, early the next morning. The record demonstrates that they walked together from a party store to an area near the river on the University of Michigan campus in Flint. During that walk, SW thought that she was forming friendships with both

defendant and codefendant, and she was able to observe them without any duress. Defendant then knocked SW to the ground, dragged her to a tunnel under the river's bridge, and sexually assaulted her for more than 10 minutes, giving SW additional time to observe defendant, albeit under much more stress.

Because defendant did not object to the identification at trial, there was no evidentiary hearing regarding the accuracy of SW's description of defendant. But, based on defendant's arrest photograph, the prosecutor argued in closing argument that the description was accurate. SW reported to the 9-1-1 operator that defendant was black, bald, and had facial hair. According to the prosecutor in closing, that description accurately described defendant's characteristics. Moreover, SW reported that defendant wore a black hoodie with a red shirt underneath, black pants, and tan boots. The arresting officer testified that defendant was wearing a navy blue hoodie, dark pants, and tan boots. According to the prosecutor's description of the arrest photograph, defendant also wore a red shirt underneath.

In the afternoon following the crime, SW and her grandfather returned to the bus terminal, where she had originally met defendant and codefendant. When she again saw the men there, the police were called. SW testified that she was sure that the men she saw at the bus terminal were "the same guys from the night before." The identification was made around 1:00 p.m., approximately 12 hours after the sexual assault and robbery earlier that morning. Given SW's relatively lengthy opportunity to observe defendant, her accurate description, and the short period between the crimes and identification, we agree there was no likelihood of misidentification despite any suggestiveness involved with identifying defendant with codefendant in front of the police car. Although defendant suggests that he could have been arrested and brought to the police station for a corporeal lineup, the identification at the scene of the arrest promoted fairness to defendant and ensured greater reliability. *Winters*, 225 Mich App at 727. Accordingly, the identification at the bus terminal was not impermissibly suggestive, and defendant cannot establish plain error from its admission into evidence at trial.[2]

We also find that even if evidence of SW's identification of defendant before and at trial had not been admitted, there was substantial evidence that he was the perpetrator. Codefendant testified that he and defendant were the men who robbed and raped SW. Defendant's DNA was recovered from a condom wrapper left at the scene. Codefendant also identified himself, defendant, and SW on the surveillance footage captured before the crime, and the surveillance footage after the crime showed codefendant and defendant going to a nearby dorm, where codefendant's girlfriend, Adams, lived. Adams recalled that codefendant had called her and

---

[2] Given our conclusion that the identification at the arrest was not impermissibly suggestive, we need not address defendant's claim that because it was impermissibly suggestive, there was no independent basis for SW's in-court identification of defendant. Regardless, we note that all but one of the factors—SW's mental state (including a learning disability and emotional upset from the assault and robbery)—indicate that she had an independent, untainted basis for the in-court identification. Moreover, even SW's mental state did not preclude her from making an accurate description of defendant to authorities.

urgently requested that she come to the door to let them in. When they came inside, they carried SW's purse and jacket; Adams later found SW's identification in codefendant's pants. Then, codefendant and defendant took showers, which Adams testified was unusual. The next day, when Adams received a crime alert about the robbery and rape, defendant was joking because the email "described him as a 30-year-old." Also, defendant called his wife and asked her to put money in his prisoner account if he were arrested. From this evidence, the jury could infer that defendant was one of the perpetrators. Therefore, any error resulting from SW's identifications of defendant did not affect his substantial rights.

Defendant alternatively argues that defense counsel was ineffective for failing to move to suppress SW's identifications. We disagree. We review defendant's unpreserved argument for errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

The United States and Michigan constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

As we concluded above, defendant has not established error related to SW's identifications of him. Therefore, any objection or motion to suppress the identifications on the same bases would have been futile, and defense counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms. *Id.* Moreover, defendant cannot establish that, but for the failure to move to suppress, or object to the identifications, the result of the proceedings would have been different. Defendant is not entitled to a new trial on the basis of ineffective assistance of counsel.

## II. PRIOR ROBBERY CONVICTION

Defendant next claims that his due process rights were violated when defense counsel elicited evidence—on direct examination of defendant—that he had a prior armed robbery conviction. "A defendant will not be heard to introduce and use evidence to sustain his theory at trial and then argue on appeal that the evidence was prejudicial and denied him a fair trial." *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001). Defendant may not benefit from an alleged error to which he contributed by plan or through negligence. *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003). To hold otherwise would allow defendant to harbor error as an appellate parachute. *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998).

At trial, defendant explained on direct examination that he ran from the police at the bus terminal because he was on parole for armed robbery and had been selling marijuana. On redirect examination, defendant also explained that he had violated parole by removing his tether and that violation—not the emailed crime alert—explained the request that Adams overheard for money to be put on his account if he were arrested. In light of defendant's strategic use of the information about his prior conviction and parole, we conclude that defendant's argument on appeal that it denied him a fair trial is without merit. *Witherspoon*, 257 Mich App at 333; *Fetterley*, 229 Mich App at 520.

Defendant also claims that defense counsel was ineffective for eliciting this testimony about his prior conviction. We disagree.

As just discussed, defendant through trial counsel, solicited testimony concerning his prior conviction and parole status for strategic trial purposes. This Court presumes that counsel provided defendant with effective assistance of counsel. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). Furthermore, counsel's presumptively strategic trial decisions, such as calling witnesses, questioning them, and presentation of evidence or arguments, will not be second-guessed on appeal. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). In light of defendant's strategic use of information regarding his prior conviction and his parole status, his argument on appeal that he was denied the effective assistance of counsel lacks merit. *Id.*; *Witherspoon*, 257 Mich App at 333; *Fetterley*, 229 Mich App at 520.

## III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a supplemental brief, filed in propria persona pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

## A. JUDICIAL MISCONDUCT

In a Standard 4 brief on appeal, defendant argues that the trial court's characterization of SW as the victim during voir dire and in certain instructions amounted to judicial bias and invaded the province of the jury. We disagree. Defendant's unpreserved claim is reviewed for plain error affecting his substantial rights. *McCray*, 245 Mich App at 638.

A defendant has the right to a fair and impartial trial under both the United States and Michigan constitutions. See US Const, Am VI; Const 1963, art 1, § 20. "A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015).

> A party that challenges a judge for bias must overcome a heavy presumption of judicial impartiality. Where a judge forms opinions during the course of the trial process on the basis of facts introduced or events that occur during the proceedings, such opinions do not constitute bias or partiality unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible. Comments critical of or hostile to counsel or the parties are ordinarily not supportive of finding bias or partiality. [*People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999) (citations omitted).]

As our Supreme Court stated in *Stevens*, 498 Mich at 170-171 (citations omitted):

> A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. . . . A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.

The Court in *Stevens* identified five, non-exhaustive steps for a reviewing court to consider in its fact-specific analysis: (1) "the nature or type of judicial conduct itself," (2) "the tone and demeanor the trial judge displayed in front of the jury," (3) "the scope of judicial intervention within the context of the length and complexity of the trial, or any given issue therein," (4) "the extent to which a judge's comments or questions were directed at one side more than the other," and (5) the presence or absence of a curative instruction. *Id.* at 172, 174, 176-177.

The trial court's references to SW as the victim do not evidence deep-seated favoritism or antagonism. As the prosecutor argues, when the trial court read from the information, the court attributed its contents—including any references to the victim—to the prosecutor. To the extent that the trial court otherwise referred to SW as the victim, defendant cannot establish plain error affecting his substantial rights. By definition, SW was, in fact, a victim. A "victim" is "a person who suffers from a destructive or injurious action or agency." *Random House Webster's College Dictionary* (2001). Moreover, relevant to criminal sexual conduct cases, the term "victim" "means the person alleging to have been subjected to criminal sexual conduct." MCL 750.520a(s). Defendant did not dispute that SW was robbed or sexually assaulted and was, therefore, a victim. He only claimed that codefendant, not defendant, was the perpetrator. Nothing in the record demonstrates that the judge's demeanor or tone suggested any partiality, and defendant did not object to note any inappropriateness. See *Stevens*, 498 Mich at 176. Moreover, the trial court did not intervene during the course of trial to identify SW as a victim but instead made the references while conducting voir dire and giving jury instructions. Defendant does not argue that the trial court made additional comments or asked questions that were directed at one side more than the other. *Id.* at 176-177.

Moreover, the trial court instructed the jury that defendant was presumed to be innocent. The jurors were instructed that the trial court's comments and instructions were not evidence. The trial court also instructed the jury, "So if you believe I have an opinion about how you should decide the case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide the case based on the evidence." The jurors are presumed to have followed the trial court's instructions. *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). Defendant cannot establish plain error affecting his substantial rights based on the trial court's characterization of SW as a victim.

## B. RIGHT TO COUNSEL

Defendant's last claim in his Standard 4 brief on appeal is that he was constructively denied representation under *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), because defense counsel failed to interview the prosecution's witnesses. We disagree.

Our review of defendant's unpreserved claim is limited to errors apparent from the record. *Matuszak*, 263 Mich App at 48; *Wilson*, 242 Mich App at 352.

> Most claims of ineffective assistance of counsel are analyzed under the test developed in *Strickland* . . . . Under this test, counsel is presumed effective, and the defendant has the burden to show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error. But in *Cronic* . . . , the United States Supreme Court identified three rare situations in which the attorney's performance is so deficient that prejudice is presumed. [*People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007) (citations omitted).]

"One of these situations involves the complete denial of counsel, such as where the accused is denied counsel at a 'critical stage' of the proceedings." *Id*. The other two situations are when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Id*. at 243 n 10 (quotation marks and citation omitted).

A defendant raising a claim of ineffective assistance of counsel bears the burden of proving the factual predicate of his or her claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). To support his claim in his Standard 4 brief on appeal, defendant relies only on two proposed, unsigned affidavits by defense counsel and codefendant. There is no evidence in the trial court record regarding defense counsel's preparation for this case. Because defendant has not provided any evidence establishing that defense counsel failed to interview or investigate the prosecution's witnesses, defendant's claim necessarily fails. *Id*. Moreover, even if we were to consider defendant's claim under *Cronic*, we would conclude that the record does not establish that defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. On the contrary, defense counsel extensively cross-examined the witnesses at trial, conducted voir dire of the experts, and called defendant to testify in his case-in-chief. He also made a thorough closing argument, attacking the prosecutor's case.

We affirm.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey

-7-