*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRALYN DOMUNIQUE PETTWAY,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 343792
Oakland Circuit Court
LC No. 2016-258245-FC

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant, Bralyn Domunique Pettway, appeals his jury trial convictions of armed robbery, MCL 750.529, and extortion, MCL 750.213. Pettway was sentenced to concurrent terms of 81 months to 20 years' imprisonment for each conviction. We affirm.

## I. RELEVANT FACTS

This case arises from a failed drug deal. The victim, who wanted to start selling prescription medication but needed a supplier, was introduced to Pettway by a mutual acquaintance. The victim and Pettway communicated via text and telephone several times before arranging to meet in person on December 29, 2015, so that the victim could buy 100 pills from Pettway for $200. When the victim and Pettway met in person at the designated location, Pettway "flashed" a pill bottle and asked the victim for the money. After the victim handed Pettway the money, Pettway pulled out a knife and announced that he was robbing the victim. The victim fled without the pills. The victim did not immediately contact law enforcement because he did not want his parents to know that he was engaging in criminal activity.

On January 2, 2016, the victim began receiving telephone calls from Pettway's telephone number, which the victim did not answer. The victim later received a text message from Pettway's number, threatening to tell the victim's mother about the victim's botched attempt to purchase prescription pills. Thereafter, the victim told a friend that he had been receiving—and

-1-

ignoring—phone calls from Pettway's telephone number. At one point, the victim's friend answered the phone when Pettway called the victim. Pettway reiterated that he intended to report the victim's attempt to buy prescription pills and added that he "should have killed [the victim] when [he] had the chance." Pettway then demanded $150. The victim was worried about his safety and his family's safety because Pettway knew the general area where they lived. After making arrangements with Pettway, the victim placed an envelope containing $150 next to a fire hydrant that was close to the site of the robbery. Thereafter, Pettway continued to attempt to contact the victim, which prompted the victim to report Pettway to the police.

The police presented the victim with a computer-generated composite photograph array. The victim identified Pettway as the person who had robbed him. The police also linked Pettway to the phone number the victim testified he had used to communicate with Pettway.

After a jury trial, Pettway was convicted of armed robbery and extortion and was sentenced to terms of imprisonment. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Pettway contends that he was denied his right to effective assistance of counsel because defense counsel failed to investigate and present an alibi defense. We disagree.

Pettway failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial, and this Court denied Pettway's motion to remand for a *Ginther*[1] hearing. Therefore, our review of this issue "is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.*

Effective assistance of counsel is strongly presumed. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), vacated and remanded on other grounds 436 Mich 866 (1990). The failure to reasonably investigate a case can constitute ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 51-55; 826 NW2d 136 (2012). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009), quoting *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). The "defendant has the burden

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

In support of his claim that defense counsel was ineffective, Pettway attaches his own affidavit and the affidavit of his sister to his appellate brief. MCR 7.210(A)(1). The affidavits contain no indication that defense counsel failed to engage in a "reasonable investigation" of an alibi defense before trial. More specifically, at no point in Pettway's affidavit does he indicate that he informed defense counsel that his sister could assist in providing him with an alibi defense. Rather, Pettway avers that he "had a witness to show [he] wasn't around the crime" but that defense counsel "never answered the phone to set up meetings" or replied to "text messages." Pettway does not identify his sister as the alibi witness in his affidavit, and the affidavit of Pettway's sister only supports that defense counsel never contacted her to set up an interview. Although Pettway's sister avers that defense counsel was "made aware" that she "had information which would have provided an alibi for [Pettway]," there is no indication in the affidavit that Pettway's sister has personal knowledge that defense counsel was informed that she could testify as an alibi witness. Accordingly, the affidavits do not support that Pettway informed defense counsel that his sister was a potential alibi witness but that counsel nonetheless failed to investigate and present Pettway's sister's testimony at trial. Therefore, Pettway has failed to establish the factual predicate for his claim of ineffective assistance of counsel. *Hoag*, 460 Mich at 6. Moreover, we fail to see how defense counsel's failure to call an alibi witnesses at trial amounted to ineffective assistance given that Pettway admitted in open court on the first day of trial that he was involved in the transaction with the victim on December 29, 2015.[2] See *Nix v Whiteside*, 475 US 157, 171; 106 S Ct 988; 89 L Ed 2d 123 (1986) (holding that a failure to present perjured testimony does not constitute ineffective assistance of counsel). In sum, Pettway is not entitled to relief based on his claim of ineffective assistance of counsel.

### III. MOTION TO REMAND FOR A *GINTHER* HEARING

Pettway alternatively requests a remand for a *Ginther* hearing. This Court denied Pettway's earlier motion to remand,[3] and Pettway has not set forth any additional facts or evidence that would require development of a record to determine if defense counsel was ineffective. Therefore, we again deny Pettway's request for a remand. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007), citing MCR 7.211(C)(1)(a).

---

[2] Additionally, at sentencing, Pettway apologized to "the victim for the pain and anguish [he] put [the victim] through." Pettway also apologized to his girlfriend and family. Pettway asked God for forgiveness and also stated that he accepted "full responsibility for what [he did]. . . ."

[3] On January 23, 2019, Pettway's motion to remand for a *Ginther* hearing was denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Pettway*, unpublished order of the Court of Appeals, entered January 23, 2019 (Docket No. 343792).

## IV. PROSECUTORIAL ERROR

Next, Pettway argues that he was denied a fair trial because of prosecutorial error. He contends that the prosecutor argued facts not in evidence and impermissibly vouched for the credibility of his witnesses. We disagree.

"To preserve an issue of prosecutorial [error], a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because that did not occur here, we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original). A defendant bears the burden of persuasion with respect to prejudice. *Id*. at 763. "We will not find error requiring reversal if a curative instruction could have alleviated the effect of the prosecutor's [error]." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

"A prosecutor has committed [prosecutorial error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *Lane*, 308 Mich App at 62. "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "Issues of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek*, 274 Mich App at 64 (citation omitted).

### A. ARGUING FACTS NOT IN EVIDENCE

Pettway claims that the prosecutor argued facts not in evidence during closing arguments. "A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but [he or] she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). That includes "a rational argument based on the evidence and common experience." *Id.*

In this case, the victim testified that Pettway robbed him with what appeared to be a red-handled kitchen knife. The investigating detective testified that he was permitted to investigate the apartment of Pettway's girlfriend and, when the detective was in the apartment's kitchen, he saw a knife block filled with red-handled knives. Some of the knives were missing, and the

-4-

detective took a photograph of the knives. The photograph was entered into evidence. During closing arguments, the prosecutor made the following argument:

> What's also really important about [the victim's] testimony is a knife with a red handle was pulled on him. Ladies and gentlemen, how common is it to find a knife with a red handle? Not that common I would argue to that. Most of the time they're black, they're wooden, and wouldn't you know, the apartment where . . . [Pettway] stays [has] a butcher block full of knives with red handles. Again, ladies and gentlemen, this isn't a coincidence. It's not a coincidence because it happened exactly the way [the victim] told you it happened.

Pettway contends that the prosecutor's argument was improper because there was no evidence in support of the prosecutor's assertion that is uncommon to find a knife with a red handle. We disagree that the argument was improper given that "[i]t is well known that factfinders may and should use their own common sense and everyday experience in evaluating evidence." *People v Simon*, 189 Mich App 565, 567; 473 NW2d 785 (1991). The prosecutor's argument that knives with red handles are not common was a permissible appeal to the jury to exercise its common sense and everyday experience when evaluating the evidence, which the trial court instructed the jury it should use.[4] Furthermore, even if the prosecutor's comment was improper, we conclude that a jury instruction could have cured any prejudice. See *Lane*, 308 Mich App at 62. Thus, Pettway has not shown plain error affecting his substantial rights.

## B. VOUCHING FOR WITNESSES

Next, Pettway argues that the prosecutor improperly bolstered certain witnesses' credibility. We disagree.

"A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). A prosecutor may, however, argue from the facts in evidence that a witness is worthy of belief, *id.*, "especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes," *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66.

During closing arguments, the prosecutor stated:

> And we–and you heard them, [the victim and the victim's friend] came here, they told you, they said they were consistent with everything. They said that when during the preliminary examination they told them the written statements, everything they told [the detective] has been consistent with what we heard today,

---

[4] See M Crim JI 3.5(9).

because it's consistent because it did not go down any other way but the way I presented it to you.

We conclude that the prosecutor's argument was a proper credibility argument for the jury's consideration. See *Dobek*, 274 Mich App at 66. Importantly, at no point did the prosecutor imply that he had special knowledge that the victim and the victim's friend were testifying truthfully. Rather, the prosecutor simply used the evidence that was presented at trial to show that the testimony of the victim and the victim's friend was consistent with what they reported to the police and with their testimony at the preliminary examination. Because it was permissible for the prosecutor to argue that the victim and the victim's friend were worthy of belief, we conclude that Pettway has not established plain error.

Moreover, even if Pettway could establish that the comments amounted to improper bolstering, we conclude that the standard jury instructions provided to the jury lessened any prejudicial effect. We presume that jurors follow the trial court's instructions. *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009).

At the beginning of trial, the trial judge issued a standard preliminary instruction with respect to what constitutes evidence:

> After all the evidence has been presented the prosecutor and [Pettway's] lawyer will make their closing arguments. Like the opening statements, these are not evidence. They are only meant to help you understand the evidence and the way each side sees the case. You must base your verdict only on the evidence.

* * *

> Evidence includes only sworn testimony of witnesses, the exhibits admitted into evidence and anything else I tell you to consider as evidence.

After closing arguments, the trial judge again issued the following standard instruction:

> Many things are not evidence. You must be careful not to consider them as such. I will now describe some of the things that are not evidence. . . . The lawyers' statements and arguments and any commentary are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by evidence or by your own common sense and general knowledge. . . . You are the only judges of the facts and you should decide this case from the evidence.

Accordingly, the jury was instructed at the beginning and end of trial that the comments that the prosecutor made during closing arguments did not constitute evidence. Jurors are presumed to follow their instructions. See *Gayheart*, 285 Mich App at 210. Because we conclude that these standard instructions were sufficient to cure any prejudicial effect, Pettway has failed to establish plain error affecting his substantial rights.

-6-

In sum, Pettway has failed to establish that the prosecutor's closing arguments constituted plain error affecting his substantial rights. Consequently, Pettway was not denied a fair trial as a result of the prosecutor's arguments. See *Ackerman*, 257 Mich App at 454.

## V. IDENTIFICATION

Pettway argues that the photographic array presented to the victim was impermissibly suggestive, thereby rendering the victim's trial identification of Pettway inadmissible. Because Pettway did not object to the identification testimony in the trial court, we review for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). To challenge an identification on due process grounds, a defendant must establish "that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Id.*

In general, a photographic array is not suggestive if "it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotation marks omitted). When "the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person." *People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973), overruled in part on other grounds *People v Hickman*, 470 Mich 602 (2004). But mere "differences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn by a defendant and the others pictured in a photographic lineup" do not render a lineup impermissibly suggestive, unless they substantially distinguish the defendant from other lineup participants, thereby leading "to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 304-305, 312 (citations omitted).

The photographic array here consists of six photographs, including a photograph of Pettway. The photographs are all the same size and depict the individuals from the same angle (i.e., showing each man's head, neck, and shoulders). The men appear to be similar in age, and all of the men are African-American with short, dark hair. There is no indication in the record that the police said or did anything while the victim viewed the photographic array that rendered the identification procedure unduly suggestive. In fact, the investigating detective denied that he made any suggestions when presenting the photographic lineup to the victim.

Nonetheless, on appeal, Pettway argues that the array was impermissibly suggestive because (1) his photograph was placed at the center of the photo array, (2) his photograph was surrounded on top and both sides by males in white T-shirts, and (3) he was the only who was wearing a sweatshirt, as opposed to a T-shirt. We conclude that Pettway has not presented any legal support to establish that the mere position of his photograph at the center of the second row of photographs and the fact that he was wearing a sweatshirt and not a T-shirt was so unduly suggestive that it gave rise to a substantial likelihood of misidentification. See *Kurylczyk*, 443 Mich at 304-305, 312. Thus, because we conclude that the record contains no basis for

concluding that the photographic lineup was impermissibly suggestive, Pettway cannot establish plain error.

## VI. STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Pettway makes the same arguments raised in Issue V. Pettway further argues that he was denied the effective assistance of counsel because "there was no justifiable reason for trial counsel to not object to the use of the photographic lineup." Pettway contends that, without the photographic lineup, he would not have been charged or convicted of the crimes. We have thoroughly addressed the question of whether the victim's identification of Pettway was tainted by an unduly suggestive array. Because the photographic array was not unduly suggestive, there was no basis for defense counsel to object. Counsel is not ineffective for failing to make meritless or futile objections. *People v Riley (After Remand),* 468 Mich 135, 142; 659 NW2d 611 (2003). Therefore, Pettway was not denied the effective assistance of counsel.

Affirmed.


/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro